| | |
|---|---|
| **DISTRICT COURT, EL PASO COUNTY, COLORADO**<br>270 South Tejon Street<br>Colorado Springs, CO 80903<br>Telephone: (719) 452-5000 | DATE FILED: August 1, 2017 9:21 PM<br>FILING ID: 3D6D5FFD973F8<br>CASE NUMBER: 2017CV31878 |
| Plaintiff:⠀⠀⠀FIRSTBANK, a Colorado banking<br>⠀⠀⠀⠀⠀⠀⠀⠀⠀association,<br><br>vs.<br><br>Defendants:⠀⠀KARL LIPPARD, INC., d/b/a/ Karl<br>⠀⠀⠀⠀⠀⠀⠀⠀⠀Lippard Designs, a Colorado corporation. | ▲ COURT USE ONLY ▲ |
| | Case Number: |
| *Attorneys for FirstBank:*<br>Chad S. Caby, Atty. Reg. #30927<br>Trevor G. Bartel, Atty. Reg. #40449<br>Conor A. Flanigan, Atty. Reg. #48748<br>Lewis Roca Rothgerber Christie LLP<br>One Tabor Center, Suite 3000<br>1200 Seventeenth Street<br>Denver, Colorado  80202<br>Tel:⠀303.623.9000<br>Fax:⠀303.623.9222<br>E-Mail:⠀ccaby@lrrc.com<br>⠀⠀⠀⠀⠀⠀tbartel@lrrc.com<br>⠀⠀⠀⠀⠀⠀cflanigan@lrrc.com | Div.:⠀⠀⠀⠀⠀⠀⠀⠀⠀Ctrm: |

## VERIFIED COMPLAINT

Plaintiff FirstBank ("FirstBank" or "Plaintiff"), through its undersigned counsel, Lewis Roca Rothgerber Christie LLP, asserts the following Verified Complaint against Defendant Karl Lippard, Inc., d/b/a/ Karl Lippard Designs, and states:

## PARTIES

1.⠀⠀⠀⠀FirstBank is a Colorado banking association doing business at 10403 W. Colfax Ave., Lakewood, CO 80215.

2.⠀⠀⠀⠀Defendant Karl Lippard, Inc., d/b/a/ Karl Lippard Designs ("Defendant" or "Lippard Inc.") is a Colorado corporation doing business at 3259 Electra Drive, Colorado Springs, CO 80906.

GOVERNMENT EXHIBIT<br>3<br>PENGAD 800-631-6989

## JURISDICTION AND VENUE

3.     This Court has personal jurisdiction pursuant to COLO. REV. STAT. § 13-1-124 and subject matter jurisdiction pursuant to COLO. CONST. art. VI, § 9 because Defendant transacted business within this state.

4.     Venue is proper in this Court pursuant to COLO. R. CIV. P. 98(c) and the parties' agreements, as Defendant entered into the subject contracts in El Paso County, Colorado.

5.     All conditions precedent to the maintenance of this action have been performed or have occurred.

## GENERAL ALLEGATIONS

### A.     The SBA Note

6.     On July 3, 2013, Lippard Inc. executed and delivered a U.S. Small Business Administration Note documenting a $150,000.00 loan to FirstBank, Loan No. 8189395 (the "SBA Note").  A copy of the SBA Note is attached hereto as **Exhibit A**.

7.     Interest on the SBA Note was to accrue on the unpaid principal balance at a rate of 7.38% per year.  *See* **Exhibit A, ¶ 3, PAYMENT TERMS.**

8.     The SBA Note requires payments of principal and interest in the amount of $2,299.13 on the first day of each month beginning August 1, 2013.  *See* **Exhibit A, ¶ 3, PAYMENT TERMS.**

9.     Pursuant to the SBA Note, "if payment on this Note is more than 10 days late, Lender may charge Borrower a late fee of up to 5.00% of the unpaid portion of the regularly scheduled payment."  *See* **Exhibit A, ¶ 3, PAYMENT TERMS.**

10.    Regarding default, the SBA Note provides:

> Borrower is in default under this Note if Borrower does not make a payment when due under this Note, or if Borrower or Operating Company:
>
> > A. Fails to do anything required by this Note and other Loan Documents; . . .
> >
> > K. Has any adverse change in financial condition or business operation that Lender believes may materially affect Borrower's ability to pay this Note.

*See* **Exhibit A, ¶ 4, DEFAULT.**

11.     In the event of default, the SBA Note provides:

Without notice or demand and without giving up any of its rights, Lender may:

> A. Require immediate payment of all amounts owing under this Note;
>
> B. Collect all amounts owing from any Borrower or Guarantor;
>
> C. File suit and obtain judgment;
>
> D. Take possession of any Collateral; or
>
> E. Sell, lease, or otherwise dispose of, any Collateral at public or private sale, with or without advertisement.

*See* **Exhibit A, ¶ 5, LENDERS RIGHTS IF THERE IS A DEFAULT.**

12.     Regarding attorneys' fees and costs, the SBA Note provides:

Without notice and without Borrower's consent, Lender may:

> A. Incur expenses to collect amounts due under this Note, enforce the terms of this Note or any other Loan Document, and preserve or dispose of the Collateral. Among other things, the expenses may include . . . reasonable attorney's fees and costs. If Lender incurs such expenses, it may demand immediate repayment from Borrower or add the expenses to the principal balance . . .

*See* **Exhibit A, ¶ 6, LENDER'S GENERAL POWERS.**

13.     On July 3, 2013, Lippard Inc. executed and delivered a Security Agreement to FirstBank, which secured the SBA Note (the "Security Agreement"). A copy of this Security Agreement is attached hereto as **Exhibit B**.

14.     The Security Agreement identifies the "Secured Debt" as the SBA Note "No. 8189395, dated July 3, 2013, from Karl Lippard, Inc. and Karl C. Lippard (Obligor) to [FirstBank] in the amount of $150,000." *See* **Exhibit B, ¶2(A), Specific Debts.**

3

15.     The Security Agreement grants FirstBank:

> . . . a security interest in all of the Property described in this Agreement that [Lippard] own[s] or [has] sufficient rights in which to transfer an interest, now or in the future, wherever the Property is or will be located, and all proceeds and products from the Property (including, but not limited to, all parts, accessories, repairs, placements, improvements, and accessions to the property). Property is all the collateral given as security for the Secured Debts and described in this Agreement, and includes all obligations that support the payment or performance of the Property.

*See* **Exhibit B, ¶ 4, SECURITY INTEREST.**

16.     The Security Agreement defines "Property" as all inventory, accounts and other rights to payment, equipment, and fixtures of Lippard Inc., whether presently owned or owned in the future (the "Lippard Inc. Collateral"). *See* **Exhibit B, ¶ 5, PROPERTY DESCRIPTION.**

17.     The Security Agreement defines default as failure to "make payment in full when due," "failure to perform any condition or to keep any promise or covenant of this Agreement," or "default on any other debt or agreement" with FirstBank. *See* **Exhibit B, ¶ 11(A), Payments; ¶ 11(D), Failure to Perform; ¶ 11(F), Other Agreements.**

18.     As to remedies, the Security Agreement authorizes FirstBank to "make all or any part of the amount owing by the terms of the Secured Debts immediately due[,]" to "use any and all remedies [FirstBank has] under state or federal law or in any Loan Document[,]" and "repossess the Property so long as the repossession does not involve a breach of the peace." *See* **Exhibit B, ¶ 13(A), Acceleration; ¶13(B), Sources; ¶13(F), Repossession.**

19.     Upon repossession of the Property, FirstBank may "sell, lease or otherwise dispose of the Property as provided by law" and "apply what [it] receive[s] from the disposition of the Property" to "expenses, attorneys' fees and legal expenses (where not prohibited by law), and any debt." *See* **Exhibit B, ¶ 13(F), Repossession.**

20.     The Security Agreement is governed by the laws of the State of Colorado and sets venue in this Court. *See* **Exhibit B, ¶ 16, Applicable Law.**

21.     To perfect the Security Agreement and the Lippard Inc. Collateral, on August 14, 2013, FirstBank filed its UCC Financing Statement with the Colorado Secretary of State at Validation Number 20132071812 (the "UCC Financing Statement"). A copy of the UCC Financing Statement is attached hereto as **Exhibit C**.

**B.      The Lippard Inc. Promissory Note**

22.      On March 10, 2015, Lippard Inc. executed and delivered a Promissory Note documenting a $15,000 loan to FirstBank (Loan Number 8474537) (the "Promissory Note").  A copy of the Promissory Note is attached hereto as **Exhibit D**.

23.      Interest on the Promissory Note was to accrue on the unpaid principal balance at a rate of 7.500% per year.  *See* **Exhibit D, ¶ 3, INTEREST.**

24.      In the event of default, interest was to accrue on the unpaid principal balance at a rate of 36% per year until paid in full.  *See* **Exhibit D, ¶ 3(A), Interest After Default.**

25.      The Promissory Note required a single payment of all unpaid Principal and accrued interest on September 1, 2015.  *See* **Exhibit D, ¶ 6, PAYMENT.**

26.      Under the Promissory Note, if a payment is more than 10 days late, FirstBank may charge 5% of the unpaid principal balance, or $100, whichever is less.  *See* **Exhibit D, ¶ 5(A), Late Charge.**

27.      The Promissory Note defines default as: failure to "make payment in full when due," "failure to perform any condition or to keep any promise or covenant of this Note," or "default on any other debt or agreement" with FirstBank.  *See* **Exhibit D, ¶ 11(A), Payments; ¶ 11(E), Failure to Perform; ¶ 11(G), Other Agreements.**

28.      As to remedies, the Promissory Note authorizes FirstBank to "make all or any part of the amount owing by the terms of this Note immediately due[,]" or to "use any and all remedies [FirstBank has] under state or federal law or in any Loan Document.  *See* **Exhibit D, ¶ 14(A), Acceleration; ¶ 14(B), Sources.**

29.      Regarding attorneys' fees, the Promissory Note, provides that FirstBank is entitled to recover "all expenses of collection, enforcement or protection," including "reasonable attorneys' fees after default and referral to an attorney not your salaried employee, court costs, and other collection costs."  *See* **Exhibit D, ¶ 15, COLLECTION EXPENSES AND ATTORNEYS' FEES.**

30.      The Promissory Note is governed by the laws of the State of Colorado and sets venue in this Court.  *See* **Exhibit D, ¶ 19, APPLICABLE LAW.**

31.      On November 23, 2015, Lippard Inc. executed and delivered a Debt Modification Agreement to FirstBank.  A copy of the Debt Modification Agreement is attached hereto as **Exhibit E**.  The Debt Modification Agreement modified the Promissory Note by, *inter alia*, requiring monthly payments of $449.28, with a final payment of all amounts due and owing on November 10, 2017.  *See* **Exhibit E, ¶ 4.**

### C.     The Cash Reserve Account

32.     In or around December 2013, Lippard Inc. executed and delivered to FirstBank a FirstBank Commercial Cash Reserve Program Application requesting a $5,000 line of credit (the "Lippard Inc. Cash Reserve").

33.     The Lippard Inc. Cash Reserve was governed by the FirstBank Commercial Cash Reserve Agreement.  A copy of the Cash Reserve Agreement is attached hereto as **Exhibit F**.

34.     The Cash Reserve Agreement provides that "[a] finance charge (interest charge) will be imposed on all cash reserve advances from the date of each loan advance."  *See* Exhibit F, p. 1, ¶ Finance charge.

35.     The Cash Reserve Agreement also provides that "[y]ou promise to repay all amounts loaned to you under this Agreement along with the applicable finance charges, annual fees, and all collection costs and attorneys' fees as allowed by law or by arbitration rules, and all charges which may impose in connection with the use of your account or Cash Reserve."  *See* Exhibit F, p. 3, ¶ Repayment obligations.

36.     The Cash Reserve Agreement defines default as failure to make payment or loan reduction payments when due or the breach of any other credit obligation with FirstBank.  *See* Exhibit F, p. 4, ¶ Default.

### D.     Default Under the SBA Note, Security Agreement, Promissory Note, and Cash Reserve Account

37.     Pursuant to the terms of the SBA Note, the Security Agreement, the Promissory Note, the Debt Modification Agreement, and the Lippard Inc. Cash Reserve  (collectively, the "Agreements"), FirstBank loaned funds to Lippard, Inc.

38.     Despite FirstBank's full performance under the Agreements, Lippard Inc. has failed to make the payments required thereunder.  Accordingly, Lippard Inc. has breached the Agreements.

39.     After Lippard Inc. defaulted on the Agreements, FirstBank demanded that all outstanding indebtedness be paid pursuant to the terms of the Agreements.  As of the date of this Complaint, said demand has been refused.

40.     FirstBank is entitled to an award of its attorneys' fees and costs pursuant to the terms of the Agreements.

41.     On April 11, 2017, Karl C. Lippard, principal of Defendant Lippard Inc. individually filed for relief under Chapter 13 of the Bankruptcy Code  in the United States Bankruptcy Court for the District of Colorado (the "Bankruptcy Court"), Case No. 17-13226-JGR (the "Bankruptcy Case")

42.     On June 14, 2017, FirstBank filed a Motion for Relief from Automatic Stay under 11 U.S.C. § 362(d) (the "Stay Motion"), requesting an order from the Bankruptcy Court either granting relief from stay to the extent the automatic stay applied, or alternatively, an order from the Court that the automatic stay did not apply to Lippard, Inc. and the Lippard Inc. Collateral.

43.     The Stay Motion was filed due to Mr. Lippard including Lippard Inc. assets and debts in his Chapter 13 Bankruptcy Case, thereby making it unclear whether the automatic stay applied to those assets.

44.     FirstBank specifically requested the Court allow FirstBank to foreclose on and/or take possession and control of property described as the Lippard Inc. Collateral  A copy of FirstBank's Motion for Relief from Automatic Stay and exhibits thereto is attached hereto as **Exhibit G**.

45.     Thereafter, on July 11, 2017, the Bankruptcy Court granted FirstBank's Stay Motion and entered Judgment regarding the same, allowing FirstBank to foreclose on and/or take possession and control of the property described as:

> Lippard, Inc. Collateral as defined in the Motion for Relief from Automatic Stay (the "Motion) and the Loan Agreement and Security Agreement attached to the Motion as Exhibit 2.

*See* Order Granting Motion for Relief from Stay and Judgment, attached hereto as **Exhibit H.**

## FIRST CLAIM FOR RELIEF
### (Breach of Contract Against Lippard – SBA Note, Security Agreement, Promissory Note, and Lippard Inc. Cash Reserve)

46.     FirstBank realleges the allegations of the preceding paragraphs as if fully set forth herein.

47.     FirstBank and Lippard Inc. entered into binding contracts, as evidenced by the Agreements.

48.     FirstBank fully performed pursuant to the terms of the Agreements by loaning money to Lippard Inc.

49.     Despite FirstBank's full performance, Lippard Inc. has failed to satisfy its obligations under the Agreements.

50.     Lippard Inc.'s material breaches have caused FirstBank damages in an amount to be determined at trial.

51.     Pursuant to the terms of the Agreements, FirstBank is entitled to an award of its reasonable attorneys' fees and costs.

## SECOND CLAIM FOR RELIEF
### (Replevin)

52.      FirstBank realleges the allegations of the preceding paragraphs as if fully set forth herein.

53.      Pursuant to the terms of the Agreements and the UCC Financing Statement, FirstBank is entitled to immediate possession of all Lippard Inc. Collateral, including, but not limited to inventory, accounts and other rights to payment, equipment, and fixtures, now or hereafter owned or acquired, wherever located, including all proceeds, replacement and substitutions thereon that Lippard Inc. has an interest in and/or owns.

54.      FirstBank has demanded possession of the Lippard Inc. Collateral to satisfy the indebtedness owed to the Bank.  Said demand, however, has been refused.  Accordingly, the Lippard Inc. Collateral is being detained by Lippard Inc. against FirstBank's claim of possession.

55.      The Lippard Inc. Collateral includes those items described in **Exhibit I** hereto, including all proceeds, replacement and substitutions thereon.  Upon information and belief, the Lippard Inc. Collateral is located at 3259 Electra Dr. N., Colorado Springs, Colorado 80906.

56.      Upon information and belief, none of the Lippard Inc. Collateral has been taken for a tax assessment or fine pursuant to a statute, or seized under any execution against the property of Lippard Inc.

57.      FirstBank is entitled to an Order: (1) directing Lippard Inc. to immediately relinquish possession of the Lippard Inc. Collateral; and (2) ordering that FirstBank is entitled to sell or otherwise dispose of the Lippard Inc. Collateral and apply the proceeds of such disposition to the indebtedness due and owing by Lippard Inc. to FirstBank.

58.      FirstBank is also entitled to an order finding that FirstBank's lien on the Lippard Inc. Collateral may be foreclosed as against Lippard Inc. and all persons claiming or holding under Lippard Inc. and that said lien be decreed to be and to have been since the date thereof a first and valid lien on the subject Collateral, against Lippard Inc. for the payment of the Judgment herein requested and that the subject Lippard Inc. Collateral be seized and sold as under execution by the Sheriff of El Paso County, Colorado and the proceeds of such sale to be applied on or toward the payment of FirstBank's lien and by virtue of its security interest evidenced by the Agreements, the UCC Financing Statement, and its Judgment herein, including the principal of the Agreement, all accrued interest, attorneys' fees, costs of this suit and of said sale and any and all accruing cost.

101834849_2

<u>**THIRD CLAIM FOR RELIEF**</u>
**(In the Alternative: Unjust Enrichment)**

59.     FirstBank realleges the allegations of the preceding paragraphs as if fully set forth herein.

60.     FirstBank conferred a benefit upon Lippard Inc. in the form of loaning funds to Lippard Inc..

61.     It would be unjust to allow Lippard Inc. to retain these benefits without repaying the loaned funds.

62.     Accordingly, Plaintiff is entitled to damages in an amount to be determined at trial.

<u>**FOURTH CLAIM FOR RELIEF**</u>
**(In the Alternative: *Quantum Meruit*)**

63.     FirstBank realleges the allegations of the preceding paragraphs as if fully set forth herein.

64.     Lippard Inc. knowingly accepted FirstBank's funds and benefited from the monies.

65.     Lippard Inc. knowingly accepted the benefit of the funds under such circumstances that it would be inequitable for Lippard Inc. to retain the benefit without payment of its fair and reasonable value.

66.     FirstBank incurred damages, the amount of which will be proved at trial.

WHEREFORE, Plaintiff FirstBank respectfully requests:

1.     Judgment enter against Defendant Karl Lippard, Inc. in an amount including but not limited to damages, accrued interest, default interest, late charges, and attorneys' fees and costs, as provided by the terms of the Agreements;

2.     The Court issue an Order to Show Cause in accordance with C.R.C.P. 104 directing Lippard to show cause why all of Lippard's assets that constitute Lippard Inc. Collateral in which FirstBank's has a security interest, including but not limited to, the property described on **Exhibit I** attached hereto, the Agreements, and the UCC Financing Statement, including all proceeds, replacement and substitutions thereon should not be taken from Defendant and delivered to FirstBank;

101834849_2

3.      The Court set a Show Cause Hearing within fourteen (14) days pursuant to C.R.C.P. 104(c), to make a preliminary determination concerning the right to possession of the property described on **Exhibit I** attached hereto**,** the Agreements, and the UCC Financing Statement, including all proceeds, replacement and substitutions thereon;

4.      The Court issue a Temporary Order to Preserve Property pursuant to C.R.C.P. 104(f);

5.      Upon hearing of the issues herein, that judgment be entered in favor of FirstBank and against Lippard Inc. for possession of the property described on **Exhibit I** attached hereto, the Agreements, and the UCC Financing Statement, including all proceeds, replacement and substitutions thereon;

6.      The Court direct the Lippard Inc. to immediately relinquish possession of the Collateral and order that FirstBank is entitled to sell or otherwise dispose of the Lippard Inc. Collateral and apply the proceeds of such disposition to the indebtedness due and owing by Lippard Inc. to Plaintiff; and

7.      The Court order that the FirstBank's lien on the Lippard Inc. Collateral be foreclosed as against Lippard Inc. and all persons claiming or holding under Lippard Inc. and that said lien be decreed to be and to have been since the date thereof a first and valid lien on the Lippard Inc. Collateral, against Lippard Inc. and all persons claiming under Lippard Inc. for the payment of the Judgment herein requested and that the subject Lippard Inc. Collateral be seized and sold as under execution by the Sheriff of El Paso County, Colorado and the proceeds of such sale are to be applied on or toward the payment of FirstBank's lien and by virtue of its security interest evidenced by the Agreements, the UCC Financing Statement, and its Judgment herein, including the principal of the Security Agreement, all accrued interest, attorneys' fees, costs of this suit and of said sale and any and all accruing cost.

DATED:   August 1, 2017.

LEWIS ROCA ROTHGERBER LLP


*/s/ Trevor G. Bartel*
Chad S. Caby
Trevor G. Bartel
Conor A. Flanigan

*Attorneys for FirstBank*


Plaintiff's Address:

10403 W. Colfax Ave.
Lakewood, CO 80215.

101834849_2

**VERIFICATION**

STATE OF COLORADO    )
                              ) ss.
COUNTY OF EL PASO    )

    I, Zach Bunney, being first duly sworn upon oath, state that I am the Vice President of Plaintiff FirstBank – Colorado Springs, that I have carefully read the above and foregoing Verified Complaint, that I have personal knowledge of the facts recited therein, and that its contents are true and correct to the best of my knowledge, information and belief.


                                     Zach Bunney
                                     Vice President
                                     FirstBank – Colorado Springs


    Subscribed, sworn to and acknowledged before me this 1st day of August, 2017, by Zach Bunney as Vice President of FirstBank – Colorado Springs.

    Witness my hand and official seal.

    My commission expires: Dec 24, 2019

LEANNE N. MATTHEWS
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20074046650
MY COMMISSION EXPIRES DECEMBER 24, 2019

Notary Public

11

101834849_2