DATE FILED: February 16, 2018 10:37 AM
FILING ID: D393DAA5FA0FD
CASE NUMBER: 2017CV31878

| | |
|---|---|
| **DISTRICT COURT, EL PASO COUNTY, COLORADO**<br>270 South Tejon Street<br>Colorado Springs, CO 80903<br>Telephone: (719) 452-5000 | |
| Plaintiff:     FIRSTBANK, a Colorado banking association,<br><br>vs.<br><br>Defendant:   KARL LIPPARD, INC., d/b/a/ Karl Lippard Designs, a Colorado corporation. | ▲ **COURT USE ONLY** ▲<br><br>Case Number:  2017CV31878 |
| *Attorneys for Plaintiff FirstBank:*<br>Chad S. Caby, Atty. Reg. #30927<br>Trevor G. Bartel, Atty. Reg. #40449<br>Conor A. Flanigan, Atty. Reg. #48748<br>Lewis Roca Rothgerber Christie LLP<br>1200 Seventeenth Street, Suite 3000<br>Denver, Colorado  80202<br>Tel:   303.623.9000<br>Fax:  303.623.9222<br>E-Mail:  ccaby@lrrc.com<br>            tbartel@lrrc.com<br>            cflanigan@lrrc.com | Div.: 5             Ctrm: |
| **MOTION FOR SUMMARY JUDGMENT** | |

Plaintiff FirstBank, through its undersigned counsel, Lewis Roca Rothgerber Christie LLP, hereby submits its Motion for Summary Judgment (the "Motion") and states:

### INTRODUCTION

This is a simple collection action to recover damages against Defendant Karl Lippard Inc. ("Lippard") for the breach of certain loan agreements entered into with FirstBank.  Pursuant to the terms of the loan agreements, FirstBank loaned Lippard certain funds.  Lippard, however, failed to make the payments required by the parties' agreements thereby breaching the same.

103324956_2



In defense to FirstBank's claims, Lippard has asserted that FirstBank has submitted inaccurate documents to the Court. Lippard's assertion, however erroneous it may be, is properly categorized as an affirmative defense to FirstBank's claims, not a counterclaim against FirstBank. To the extent Lippard has stated any claims against FirstBank, Lippard's "claims" fail as a matter of law. Accordingly, based upon the undisputed material facts of this case, FirstBank is entitled to summary judgment against Lippard on its claim for Breach of Contract and any "claims" brought by Lippard.

## UNDISPUTED FACTS

**I.   The SBA Note**

1. On July 3, 2013, Lippard executed and delivered a U.S. Small Business Administration Note documenting a $150,000.00 loan to FirstBank, Loan No. 8189395 (the "SBA Note"). A copy of the SBA Note is attached to the Affidavit of K. Wilson as **Exhibit A**. *See* Aff. of K. Wilson, ¶ 3.

2. Interest on the SBA Note was to accrue on the unpaid principal balance at a rate of 7.38% per year. *See* **Exhibit A** to Aff. of K. Wilson**, ¶ 3, PAYMENT TERMS**.

3. The SBA Note requires payments of principal and interest in the amount of $2,299.13 on the first day of each month beginning August 1, 2013. *See* **Exhibit A** to Aff. of K. Wilson**, ¶ 3, PAYMENT TERMS**.

4. Pursuant to the SBA Note, "if payment on this Note is more than 10 days late, Lender may charge Borrower a late fee of up to 5.00% of the unpaid portion of the regularly scheduled payment." *See* **Exhibit A** to Aff. of K. Wilson**, ¶ 3, PAYMENT TERMS**.

5. Regarding default, the SBA Note provides:

> Borrower is in default under this Note if Borrower does not make a payment when due under this Note, or if Borrower or Operating Company:
>
> > A. Fails to do anything required by this Note and other Loan Documents; . . .
> >
> > K. Has any adverse change in financial condition or business operation that Lender believes may materially affect Borrower's ability to pay this Note.

*See* **Exhibit A** to Aff. of K. Wilson**, ¶ 4, DEFAULT**.

    6.    In the event of default, the SBA Note provides:

> Without notice or demand and without giving up any of its rights, Lender may:
>
> > A. Require immediate payment of all amounts owing under this Note;
> >
> > B. Collect all amounts owing from any Borrower or Guarantor;
> >
> > C. File suit and obtain judgment;
> >
> > D. Take possession of any Collateral; or
> >
> > E. Sell, lease, or otherwise dispose of, any Collateral at public or private sale, with or without advertisement.

*See* **Exhibit A** to Aff. of K. Wilson**, ¶ 5, LENDERS RIGHTS IF THERE IS A DEFAULT**.

    7.    Regarding attorneys' fees and costs, the SBA Note provides:

> Without notice and without Borrower's consent, Lender may:
>
> > A. Incur expenses to collect amounts due under this Note, enforce the terms of this Note or any other Loan Document, and preserve or dispose of the Collateral. Among other things, the expenses may include . . . reasonable attorney's fees and costs. If Lender incurs such expenses, it may demand immediate repayment from Borrower or add the expenses to the principal balance . . .

*See* **Exhibit A** to Aff. of K. Wilson**, ¶ 6, LENDER'S GENERAL POWERS**.

## II.     The Lippard Promissory Note

8.     On March 10, 2015, Lippard executed and delivered a Promissory Note documenting a $15,000 loan to FirstBank (Loan Number 8474537) (the "Promissory Note"). A copy of the Promissory Note is attached to the Affidavit of K. Wilson as **Exhibit B**. *See* Aff. of K. Wilson, ¶ 4.

9.     Interest on the Promissory Note was to accrue on the unpaid principal balance at a rate of 7.500% per year. *See* **Exhibit B** to Aff. of K. Wilson**, ¶ 3, INTEREST**.

10.     In the event of default, interest was to accrue on the unpaid principal balance at a rate of 36% per year until paid in full. *See* **Exhibit B** to Aff. of K. Wilson**, ¶ 3(A), Interest After Default**.

11.     The Promissory Note required a single payment of all unpaid Principal and accrued interest on September 1, 2015. *See* **Exhibit B** to Aff. of K. Wilson**, ¶ 6, PAYMENT.**

12.     Under the Promissory Note, if a payment is more than 10 days late, FirstBank may charge 5% of the unpaid principal balance, or $100, whichever is less. *See* **Exhibit B** to Aff. of K. Wilson**, ¶ 5(A), Late Charge**.

13.     The Promissory Note defines default as: failure to "make payment in full when due," "failure to perform any condition or to keep any promise or covenant of this Note," or "default on any other debt or agreement" with FirstBank. *See* **Exhibit B** to Aff. of K. Wilson**, ¶ 11(A), Payments; ¶ 11(E), Failure to Perform; ¶ 11(G), Other Agreements**.

14.     As to remedies, the Promissory Note authorizes FirstBank to "make all or any part of the amount owing by the terms of this Note immediately due[,]" or to "use any and all

remedies [FirstBank has] under state or federal law or in any Loan Document.  *See* **Exhibit B** to Aff. of K. Wilson**, ¶ 14(A), Acceleration; ¶ 14(B), Sources**.

15.   Regarding attorneys' fees, the Promissory Note, provides that FirstBank is entitled to recover "all expenses of collection, enforcement or protection," including "reasonable attorneys' fees after default and referral to an attorney not your salaried employee, court costs, and other collection costs."  *See* **Exhibit B** to Aff. of K. Wilson**, ¶ 15, COLLECTION EXPENSES AND ATTORNEYS' FEES**.

16.   The Promissory Note is governed by the laws of the State of Colorado and sets venue in this Court.  *See* **Exhibit B** to Aff. of K. Wilson**, ¶ 19, APPLICABLE LAW.**

17.   On November 23, 2015, Lippard executed and delivered a Debt Modification Agreement to FirstBank.  A copy of the Debt Modification Agreement is attached to the Aff. of K. Wilson as **Exhibit C**.  *See* Aff. of K. Wilson, ¶ 5.

18.   The Debt Modification Agreement modified the Promissory Note by, *inter alia*, requiring monthly payments of $449.28, with a final payment of all amounts due and owing on November 10, 2017.  *See* **Exhibit C** to Aff. of K. Wilson, ¶ 4.

### III.   The Cash Reserve Line of Credit

19.   In or around December 2013, Lippard executed and delivered to FirstBank a FirstBank Commercial Cash Reserve Program Application requesting a $5,000 line of credit (the "Cash Reserve").  *See* Aff. of K. Wilson, ¶ 6.

20.   The Cash Reserve was governed by the FirstBank Commercial Cash Reserve Agreement.  A copy of the Cash Reserve Agreement is attached to the Affidavit of K. Wilson as **Exhibit D**.  *See* Aff. of K. Wilson, ¶ 7.

21. The Cash Reserve Agreement provides that "[a] finance charge (interest charge) will be imposed on all cash reserve advances from the date of each loan advance." *See* **Exhibit D** to Aff. of K. Wilson, **p. 1, ¶ Finance Charge**.

22. The Cash Reserve Agreement also provides that "[y]ou promise to repay all amounts loaned to you under this Agreement along with the applicable finance charges, annual fees, and all collection costs and attorneys' fees as allowed by law or by arbitration rules, and all charges which may impose in connection with the use of your account or Cash Reserve." *See* **Exhibit D** to Aff. of K. Wilson, **p. 3, ¶ Repayment Obligations**.

23. The Cash Reserve Agreement defines default as failure to make payment or loan reduction payments when due or the breach of any other credit obligation with FirstBank. *See* **Exhibit D** to Aff. of K. Wilson, **p. 4, ¶ Default**.

### IV. Default Under the SBA Note, Security Agreement, Promissory Note, and Cash Reserve Account

24. Pursuant to the terms of the SBA Note, the Security Agreement, the Promissory Note, the Debt Modification Agreement, and the Cash Reserve (collectively, the "Agreements"), FirstBank loaned funds to Lippard. *See* Aff. of K. Wilson, ¶ 8.

25. Despite FirstBank's full performance under the Agreements, Lippard has failed to make the payments required thereunder. *See* Aff. of K. Wilson, ¶ 9. Accordingly, Lippard has breached the Agreements and damaged FirstBank.

26. As a result of Lippard's failure to make the payments as required under the Agreements, FirstBank has suffered damages in the amount of $69,059.89 in outstanding principal, $4,652.72 in outstanding interest, and $2,300.00 in late fees, for a total amount of

$76,012.61 as of February 9, 2018.  *See* Aff. of K. Wilson, ¶ 10.  Interest will continue to accrue at a rate of $14.16 daily.  *Id.*

27. In addition to the aforementioned damages suffered by FirstBank as a result of Lippard's breaches, FirstBank has been forced to incur attorneys' fees and costs to enforce its rights against Lippard in this action.  *See* Aff. of K. Wilson, ¶ 11.

28. FirstBank is entitled to recover its attorneys' fees and costs as provided by the Agreements.  As of February 15, 2017, FirstBank has incurred $52,022.00 and $668.00 in attorneys' fees and costs, respectively, totaling $52,690.00.  *See* Aff. of T. Bartel, ¶ 6; **Exhibit A** to Aff. of T. Bartel.

## V. Lippard's Letter

29. On August 1, 2017, FirstBank filed its Verified Complaint against Defendant Lippard, asserting claims for Breach of Contract and Replevin against Lippard (the "Complaint").  *See* Complaint.

30. Shortly thereafter, on August 15, 2017, the Parties conducted a Show Cause Hearing with the Court.  *See* Order Re: Motion for an Order to Show Cause Pursuant to C.R.C.P. 104.

31. At the Show Cause Hearing, Lippard hand-filed a letter that appeared to be a Response to FirstBank's Complaint (the "Letter").  *See* Letter filed August 15, 2017.  The Letter made several incoherent and unintelligible assertions regarding FirstBank's conduct, and did not make clear whether it was intended to answer FirstBank's Complaint or alternatively assert a claim for relief against FirstBank.  *See generally* Letter.

32. On August 29, 2017, FirstBank filed a Response to Defendant Karl Lippard, Inc.'s Letter (the "Response"), in which it denied any statement, allegation, or alleged claim contained in the Letter. *See* Response at ¶ 5. Moreover, FirstBank reserved the right to file a Motion to Dismiss in the event the Court determined that the Letter contained any claim for relief against FirstBank. *See* Response at ¶ 6.

33. Based on the foregoing, as well as the trial presently set for May 20, 2018, FirstBank has determined that filing a motion pursuant to Rule 56, rather than pursuant to Rule 12(b)(5), is appropriate under the procedural posture of this case. Accordingly, FirstBank seeks summary judgment on its Breach of Contract claim and with regard to those "claims" asserted in Lippard's letter, if any.

## LEGAL STANDARD

Summary judgment is proper when the pleadings, depositions, answers to interrogatories, admissions, and affidavits show that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. COLO. R. CIV. P. 56(c); *Georg v. Metro Fixtures Contractors, Inc.,* 178 P.3d 1209, 1212 (Colo. 2008). A material fact is one that will affect the outcome of the case. *Struble v. American Fam. Ins. Co.,* 172 P.3d 950, 955 (Colo. App. 2007). The moving party bears the initial burden of establishing that there are no genuine issues of material fact. Once that burden is met, the burden shifts to the non-moving party to show that there is, in fact, a genuine issue of material fact. *Ringquist v. Wall Custom Homes*, LLC, 176 P.3d 846, 849 (Colo. App. 2007). The purpose of summary judgment is to save the time and expense of a trial when, as here, based on the undisputed facts, one party cannot prevail as a matter of law. *Peterson v. Halsted*, 829 P.2d 373, 375 (Colo. 1992).

## ARGUMENT

I. **FIRSTBANK IS ENTITLED TO SUMMARY JUDGMENT ON ITS BREACH OF CONTRACT CLAIM**

A. **Legal Standard.**

To recover for breach of contract, FirstBank must prove: (1) the existence of a contract; (2) performance by FirstBank or some justification for nonperformance; (3) failure to perform the contract by Lippard; and (4) resulting damages. *See Westminster v. Centric-Jones Constructors*, 100 P.3d 472, 477 (Colo. App. 2003); *see also W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992) (noting these elements "have long been the law in Colorado" in a breach of contract action).

B. **The Parties Entered into Valid Contracts.**

It is undisputed that FirstBank and Lippard entered into the Agreements whereby FirstBank promised to loan Lippard certain funds and Lippard agreed to pay back these funds, plus interest. *See* **Exhibit A** to Aff. of K. Wilson, ¶ 3; **Exhibit B** to Aff. of K. Wilson, ¶ 6; **Exhibit C** to Aff. of K. Wilson, ¶ 4; **Exhibit D** to Aff. of K. Wilson, ¶ 3.

C. **FirstBank Fully Performed Pursuant to the Agreements.**

It is further undisputed that pursuant to the Agreements, FirstBank was obligated to, and did in fact, loan funds to Lippard. *See* Aff. of K. Wilson, ¶ 8. Therefore, FirstBank has fully performed under the terms of the Agreements.

D. **Lippard Failed to Perform.**

Pursuant to the Agreements, Lippard agreed to make certain payments to repay the loaned funds, plus interest. *See* **Exhibit A** to Aff. of K. Wilson, ¶ 3; **Exhibit B** to Aff. of K. Wilson, ¶ 6; **Exhibit C** to Aff. of K. Wilson, ¶ 4; **Exhibit D** to Aff. of K. Wilson, ¶ 3. Lippard,

however, failed to make the payments, and therefore breached the terms of the Agreements.  *See* Aff. of K. Wilson, ¶ 9.

### E. FirstBank Suffered Damages as a Result of Lippard's Breach.

As a result of Lippard's failure to make the payments as required under the Agreements, FirstBank has suffered damages in the amount of $69,059.89 in outstanding principal, $4,652.72 in outstanding interest, and $2,300.00 in late fees, for a total amount of $76,012.61 as of February 9, 2018.  *See* Aff. of K. Wilson, ¶ 10.  Interest will continue to accrue at a rate of $14.16 daily.  *Id.*  In addition to the aforementioned damages suffered by FirstBank as a result of Lippard's breaches, FirstBank has been forced to incur attorneys' fees and costs to enforce its rights against Lippard in this action.  *See* Aff. of K. Wilson, ¶ 11.  As a result, FirstBank is entitled to recover its attorneys' fees and costs as provided by the Agreements.  As of February 15, 2018, the attorneys' fees and costs incurred by Plaintiff are $52,022.00 and $668.00, respectively, totalling $52,690.00.  *See* Aff. of T. Bartel, ¶ 6; **Exhibit A** to Aff. of T. Bartel.

Accordingly, based on Lippard's undisputed breach of the Agreements, FirstBank is entitled to summary judgment on its claim for Breach of Contract in the amount of $128,702.61, with interest continuing to accrue at the rate of 8% per annum.

### II. FIRSTBANK IS ENTITLED TO SUMMARY JUDGMENT ON LIPPARD'S LETTER.

### A. Lippard Has Not Alleged Any Claims Against FirstBank.

Under COLO. R. CIV. P. 8(a), a pleading must set forth "a claim for relief," including a "short and plain statement of the claim . . . ."  A claim for relief must "be asserted in a pleading, so that appropriate defenses can be set forth in a responsive pleading."  *PIMA Fin. Serv. Corp. v. Selby*, 820 P.2d 1124, 1126 (Colo. App. 1991) (collecting Colorado cases).  In addition, the

elements of a claim for relief must also be set forth in a pleading. *Bernstein v. Dun & Bradstreet, Inc.*, 368 P.2d 780, 782–83 (Colo. 1962). Specifically, a complaint must give Plaintiff notice of the nature of the claim or claims asserted. *Blake v. Samuelson*, 524 P.2d 624, 625 (Colo. App. 1974); *Selby*, 820 P.2d at 1126; Moore's Fed. Practice § 12.36[2] (3d ed. 2017).

Lippard's Letter fails to satisfy this standard. The Letter contains no headings, titles, or other organizational structure that might designate a counterclaim. *See generally,* Letter at p. 1-4. Similarly, the Letter lacks a "short and plain statement" concisely identifying Lippard's counterclaim(s), if any, or any reference to the elements of such claims. *See PIMA*, 820 P.2d at 1126; *Bernstein*, 368 P.2d at 782–83. While the form of a complaint is not necessarily determinative, Lippard's Letter lacks even the most basic information necessary to assert a claim and provide FirstBank with due process under the circumstances.

Further, although Lippard repeatedly uses of the term "counter claim," the Letter appears to contain Lippard's affirmative defenses to FirstBank's Complaint. *See* Letter at pp. 1-3; *see also Ice v. Benedict Nuclear Pharmaceuticals, Inc.,* 797 P.2d 757, 760 (Colo. App. 1990) (discussing elements of claim of fraud "whether in support of or in defense of a claim"). An affirmative defense is defined as a "legal argument that a defendant may assert to require the dismissal of a claim or to prevail at trial." *Dinosaur Park Investments, L.L.C. v. Tello*, 192 P.3d 513, 516 (Colo. App. 2008) (citing *State v. Nieto,* 993 P.2d 493, 507 (Colo.2000); *see also Black's Law Dictionary* 451 (8th ed.2004) (defining affirmative defense as "[a] defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's ... claim, even if the allegations in the complaint are true"). Conversely, a claim for relief is defined as "the aggregate of operative facts which give rise to a right enforceable in the courts." *Dinosaur Park*

*Investments,* 192 P.3d at 516 (citing *Corporon v. Safeway Stores, Inc.*, 708 P.2d 1385, 1388 (Colo. App. 1985); *see also Black's Law Dictionary* 264 (defining claim as "[t]he assertion of an existing right; any right to payment or to an equitable remedy").

The language and nature of Lippard's Letter make clear it was intended to assert affirmative defenses to FirstBank's Complaint, rather than a claim for relief. For example, Lippard states:

> It is therefore the counter claim of Karl Lippard, Inc., Plaintiff Exhibit I was submitted as a fraudulent document to further First Bank's designs on pursuing fraud into a personal case **if an objection to Plaintiff Exhibit I is not made in this court or the court fails to see the true documents that the Plaintiff counsel has had for some months. Karl Lippard, Inc. only desires lawful documents to be submitted to the court in accordance with UCC filing**. No objection to a legal claim by the defendant.

Letter at p. 1 (emphasis added). Despite use of the term "counter claim," the quoted statement strongly suggests that Lippard intends to challenge the <u>authenticity</u> of the documents attached to FirstBank's Complaint, as a <u>defense</u> to FirstBank's claims. This is not a "counter claim" against FirstBank, but rather an objection to FirstBank's evidence.

Similarly, Lippard asserts:

> **Further in support of counter claim is that First Bank has the correct inventory in its possession quarterly, year end, on request, and open for inspection,** since SBA plaintiff Exhibit A was signed in 2013. Therefore defendants offer exhibit 7. Here in email response for documents to the bank were sent and attached as noted. **A complete inventory is attached year end 2016, Sales history, Balance Sheet, Financial Statement, and LOC from our main lender of $650 million dollars. Plaintiff Exhibit I is knowingly false and implies inventory that does not exist.** Further, in defendant Exhibit 7 shows no inventory of firearms. Firearms which by Federal law of license are to be recorded when purchased and when disposed of. At no time in the Corporations

> history has it had the capital to buy such inventory Plaintiff Exhibit I represents.

*Id.*  Again, Lippard's allegations purport to challenge the accuracy of the documents submitted in conjunction with FirstBank's Complaint.  The above-statement again challenges the <u>validity</u> of FirstBank's evidence, but does not assert a counterclaim against FirstBank.

Finally, other statements contained in the Letter seem to address FirstBank's motivations in commencing the present action:

> The Defendant in counter claim testifies to the court that the defendant exhibits herein submitted show **the Plaintiff claims stem from greed.** The ownership of patents and designs . . . show clearly the intention of the Plaintiff in two courts will commit any fraud to obtain them for the amount due . . . **Someone in First Bank wants those patents and designs; having read continuously private emails** between the President of the United States defendant Exhibit 15, Secretary of Defense defendant exhibit 16, Office of Chief of Staff defendant Exhibit 17, the King of Saudi Arabia, the Minister of India and others the Plaintiff actions are very clear.

*Id.* at pp. 2-3.  This paragraph suggests that Lippard intends to defend against FirstBank's claims by challenging the <u>legitimacy</u> and <u>intention</u> of FirstBank's claims.  *See also id.* at p. 2 ("In counterclaim defendants claim First Bank fraud with malice of forethought in collection of a debt when its records herein on exhibit of inventory do not match submission to this court . . . ").  Challenges to FirstBank's intentions in asserting its claim is a defense to FirstBank's requested relief, not an affirmative claim for relief against FirstBank.  Accordingly, Lippard's Letter does not assert any claims against FirstBank, and only responds to FirstBank's Complaint.

### B.   Lippard Has Failed to Establish the Necessary Elements of Any Claim Against FirstBank, Including Fraud.

Lippard's Letter lacks any factual or legal basis to state a counterclaim against FirstBank. The Letter is largely an unintelligible rant regarding documents sent to FirstBank and the Exhibits FirstBank has filed with this Court. As a result, FirstBank strongly denies that Lippard has asserted any claim against the Bank in this matter. Nevertheless, in the interest of resolving this matter on its Motion, FirstBank will assume that Lippard has attempted to assert a claim for fraud, and will address the numerous fatal deficiencies of this claim below.

#### 1.   Legal Standard.

Pursuant to C.R.C.P. 9(b), "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Colorado courts have consistently required all claims sounding in fraud to be pled with particularity. *See Baker v. Wood, Ris & Hames, Prof'l Corp.,* 364 P.3d 872, 883 (Colo. 2016). While a party need not plead all evidence supporting its fraud claim, the complaint must state the main facts or incidents which constitute the fraud. *Rome v. Reyes*, 401 P.3d 75, 86 (Colo. App. 2017); *see also Kinsey*, 746 P.2d at 550.

The essential elements of fraud include: (1) a false representation of a material existing fact; (2) knowledge on the part of the one making the representation that it is false; (3) ignorance on the part of the one to whom the representation is made of the falsity; (4) representation made with intention that it be acted upon; (5) the representation resulted in damage. *Kinsey v. Preeson,* 746 P.2d 542, 550 (Colo. 1987) (*citing Trimble v. City and County of Denver*, 697 P.2d 716 (Colo.1985)). At a minimum, the complaint must sufficiently "specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the

statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." *State Farm Mut. Auto. Ins. Co. v. Parrish*, 899 P.2d 285, 288 (Colo. App. 1994) (citing 2A Moore's Federal Practice ¶ 9.03[1] (1994) and 5 C. Wright & A. Miller, Federal Practice & Procedure § 1297 (1990)).

### 2. Lippard has not Alleged FirstBank Made a Fraudulent Misrepresentation.

A false representation is "any oral or written words, conduct, or combination of words and conduct that creates an untrue or misleading impression in the mind of another." CJI-Civ 19:3 (2017). Creation of a false impression, by whatever means, is the gist of a false representation. *Corder v. Laws*, 366 P.2d 369 (Colo. 1961).

The Letter provides that it is "the counter claim of Karl Lippard, Inc., Plaintiff Exhibit I was submitted as a fraudulent document . . . ." *See* Letter, p. 1. The Letter further provides that "[i]n counterclaim defendants claim First Bank fraud with malice of forethought in collection of a debt when its records herein on exhibit of inventory do not match submission to this court." *See id*. at 2 (emphasis added). In other words, Lippard is not alleging that FirstBank made fraudulent statements to Lippard, but rather that FirstBank made a fraudulent misrepresentation to the Court when it filed an allegedly fraudulent Exhibit. While FirstBank patently denies these allegations, the assertions by Lippard nevertheless do not support a fraud claim. Accordingly, Lippard cannot satisfy the first element of fraud and FirstBank is entitled to judgment as a matter of law in this matter.

### 3. FirstBank did not Know the Representations were False.

The "scienter element required for deceit significantly distinguishes [fraud] from any tort based upon simple negligence." *Ebrahimi v. E.F. Hutton & Co., Inc*., 794 P.2d 1015, 1017

(Colo. App. 1989). In a fraud case, "the gravamen of the tort is the defendant's conscious knowledge of the falsity of the representation or such recklessness as amount to conscious indifference to the truth." *Id.*

While Lippard repeatedly asserts FirstBank knew that Exhibit I was inaccurate, which it is not, it provides no factual basis for this assertion. *See* Letter at pp. 1-2. Instead, Lippard baldly asserts that the documents are "knowingly false," or that they "impl[y] inventory that does not exist" without identifying any evidence to support its conclusions. *Id.* These generic unsupported allegations fail to meet the Rule 9 "particularity" threshold and do not support a claim for fraud.

Further, while FirstBank vehemently denies the allegation of any fraud, whether it be as to Lippard or the Court, it is undisputed that Exhibit I, which Lippard claims to be a fraudulent filing, is a listing of Lippard's inventory for purposes of supporting FirstBank's claim for Replevin. In drafting Exhibit I, FirstBank simply accessed Lippard's public website and drafted a spreadsheet of the inventory and materials identified on the webpage. *See* Affidavit of K. Wilson, ¶ 12. FirstBank mirrored the public information provided by Lippard and did not include anything <u>other than the representations made by Lippard itself</u>. *Id.* Accordingly, Lippard cannot establish the second element for a claim of fraud.

### 4. Lippard Was Not Ignorant of the Alleged Fraudulent Statement.

An essential element of fraud is "ignorance on the part of the one to whom the representation is made of the falsity." *Kinsey,* 746 P.2d at 550. "[T]o establish a prima facie case of fraud, a plaintiff must present evidence that . . . the party to whom the representation was

made did not know of the falsity" of the representation. *See Brody v. Bock*, 897 P.2d 769, 775–76 (Colo. 1995).

As noted previously, the contents of Exhibit I were taken from Lippard's public website. Lippard, however, alleges that "[a]t no time in the Corporations history has it had the capital to buy such inventory Plaintiff Exhibit I represents." *See* Letter, p. 1. Because this information was taken from Lippard's public website, Lippard has nobody to blame but itself to the extent any information on Exhibit I is inaccurate. Accordingly, Lippard was not "ignorant" of the falsity of the documents and cannot satisfy the third element of a claim for fraud.

### 5. Lippard Did not Rely on the Alleged Fraudulent Statement.

In order to assert a claim for fraud, a plaintiff must establish detrimental reliance on the defendant's statements. *See Kinsey*, 746 P.2d at 550. The claim is not established by proving that a third-party relied on the statements, but rather "<u>the plaintiff</u> . . . acted in reliance on the alleged misrepresentation." *Calver v. Mayberry*, 2016WL1593821, *7, ¶ 39 (Colo. App. 2016).

Despite this requirement, Lippard has failed to allege, or even reference, <u>any</u> reliance it placed on the exhibits submitted to the Court or that it acted in any way on the allegedly fraudulent statements contained therein. Instead, Lippard argues that it believed that Exhibit I was fraudulent upon filing and immediately filed a response to the Exhibit to challenge the validity of the document. *See generally*, Letter. Not forgetting that Exhibit I was created by referencing Lippard's own public website, this course of action does not indicate reliance, but rather it indicates that Lippard has merely challenged the information provided therein. Accordingly, Lippard cannot prove it detrimentally relied on the documents FirstBank filed with the Court.

### 6.     Lippard Failed to Allege Damages.

Damages are essential elements of a fraud claim, regardless of whether fraud is asserted as a defense or as a claim for relief. *See Ice,* 797 P.2d at 760. "To recover damages for fraudulent conduct, the damages must be a reasonably foreseeable consequence of the fraud." *See Semler v. Hellerstein*, 2016 COA 143, ¶ 21, c*ert. granted sub nom. Bewley v. Semler*, 16SC849, 2017 WL 1277497 (Colo. Mar. 20, 2017) (to recover damages for fraudulent conduct, the damages must be a reasonably foreseeable consequence of the fraud).

Here, Lippard asserts that FirstBank's "fraudulent statements have created a Plaintiff $100 billion dollar liability." *See* Letter at p. 3. The basis for the $100 billion dollar demand is "due to public disclosures highlighted only here in exhibit." *Id*. Lippard alleges that these public disclosures somehow interfered with certain unidentified "enormous purchase orders." *Id*.

Lippard's argument is specious and without merit. Morover, the Exhibits attached to FirstBank's Complaint were filed as "protected" documents. As "protected" documents, the only parties who can access the documents are FirstBank, Lippard, and the Court. Accordingly, it is literally impossible for a third-party to access the Exhibits and review the information contained therein without further court order. Accordingly, there has been no public disclosure of these documents and there is absolutely no chance the documents could have interfered with any purchase orders.

Further, $100 billion in damages is not a foreseeable consequence of submitting protected documents to the Court that reflect the inventory provided on Lippard's own website, which is an, easily accessed public website. The only allegedly fraudulent conduct FirstBank perpetrated was submitting an Exhibit that contained the allegedly incorrect inventory sheet. Again,

FirstBank drafted this Exhibit using Lippard's own website and mirroring the information provided therein.  *See* Affidavit of K. Wilson, ¶ 12.  $100 billion in damages is pure whimsy and quite simply not a foreseeable consequence of submitting an inventory list based on the information contained in Lippard's own public website.  Accordingly, Lippard's claims for damages is wholly unsupported and it cannot satisfy the final element for a claim for fraud.

## CONCLUSION

The undisputed material facts indicate that FirstBank is entitled to summary judgment on its claim for Breach of Contract against Lippard.  The parties executed certain loan documents that required FirstBank to loan funds to Lippard in exchange for Lippard repaying the funds with interest.  FirstBank fully performed pursuant to the agreement by loaning funds to Lippard.  It is undisputed that Lippard failed to make the required payments and breached the loan documents, resulting in damages to FirstBank.

Further, Lippard's Letter fails to assert any cognizable claims against FirstBank and must instead be treated as an affirmative defense to FirstBank's claim for Breach of Contract.  The defenses set forth in the Letter, however, fail to create an issue of material fact precluding summary judgment in FirstBank's favor.  FirstBank is entitled to summary judgment on Lippard's claims as Lippard cannot establish the elements of any claim, let alone a fraud claim.  Accordingly, FirstBank requests that the Court enter summary judgment in favor of Plaintiff and against Lippard in the amount of $76,012.61, plus attorneys' fees and costs in the amount of $52,022.00 and $668.00, respectively, totalling $52,690.00, with interest continuing to accrue at the rate of 8% per annum.

DATED: February 16, 2018.

LEWIS ROCA ROTHGERBER CHRISTIE LLP

*/s/ Conor A. Flanigan*
Chad S. Caby
Trevor G. Bartel
Conor A. Flanigan

*Attorneys for Plaintiff FirstBank*

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 16th day of February, 2018, a true and correct copy of the foregoing **MOTION FOR SUMMARY JUDGMENT** was filed and served via ICCES and USPS upon the following:

Karl Lippard, Inc.
3259 Electra Drive
Colorado Springs, CO 80906

*Robin A. Newcomer*
Of Lewis Roca Rothgerber Christie LLP