United State vs. Karl Lippard     23-cv-01078-MDB

**FILED**
UNITED STATES DISTRICT COURT
DENVER, COLORADO

OCT 02 2023

JEFFREY P. COLWELL
CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-01078-MDB

UNITED STATES OF AMERICA,

Plaintiff,

v.

KARL C. LIPPARD,

Defendant.

---

**DEFENDANTS RESPONSE IN OPPOSITION TO PLAINTIFFS RESPONSE TO *MOTION TO DISMISS* (DOC. NO. 11)**

---

Defendant as Pro Se in response to Plaintiff's argument sets the basis of its Motion on points of justice. The Defendant has always acknowledged the debt and has to it suffering attempted to PAY the debt but was obstructed from doing so as exhibited with the Motion testify. It should pose the question of what is "Legal Tender." "Legal tender is anything recognized by law as a means to settle a public or private debt or meet a financial obligation, including tax payments, contracts, and legal fines or damages." Exhibit 2 in the Motion shows a $1 billion Cash Backed Letter of Credit. The capital is gold bars owned via agency, by the People's Republic of China. All that was required was to sign and send a Banking form MT799 format. A MT760 is returned guaranteeing "Funds" have been set aside by the correspondent bank in the amount specified. The bank collects specified fees in the transaction that far exceed the subject loan itself. The defendant's commission would have been $60 million. FirstBank refused payment against Legal Tender held in treasury reserves of a foreign country. A Breach of Contract causing a loan default. But this as evidence shows was not the first time of denial. <u>Defendant Exhibit 4.</u>

Broached perhaps first in this court setting is a point of clarification. The Defendant is a Federal Licensed Manufacturer of firearms and ammunition. The Defendant is not, nor can be separated by law, from the Federal Government and legal system. While he may be

1 | Page

Case No. 1:23-cv-01078-MDB   Document 19   filed 10/02/23   USDC Colorado   pg 2 of 12

United State vs. Karl Lippard          23-cv-01078-MDB

in court for a debt, that debt is regulated by Federal Law in the way it can be disposed of under penalty of Federal Law/Gun Contol Act. The Defendant is charged with and licensed to uphold Federal Firearm Law. He is licensed to do that at the critical point of contact with domestic and international movement, import/export, and domestic movements and sale of arms. Any attempt to subvert, coerce, blackmail, block shipment, or apply any undue influence, pressure, or otherwise interrupt his movement of arms, is a criminal offense. James, 858 F.3d at 362. Any attempt to compromise his license or his person by payment in any form is a criminal offense. Actus reus is present. That includes any court, US Mail, law enforcement officer, foreign or domestic. The law under which he is governed has no exceptions to his charge. He alone must bring a case to Federal attention upon confirmation of any violation of law that comes within his knowledge.1 Id. FFL § 922(d). Excluding this Motion, a Champaign defense attorney who fully understands the complexities of this case may not exist.

<u>Plaintiff Exhibit 3.</u> The Federal Government, Defendant relationship, clarified: A question was posed by Defendant to the Director of ATF concerning Nelson Bowers vs. Karl Lippard. US District Court Civil Action 2:04-cv-032-RWS. The question was, "How do I return more than 70 guns owned by an adversary I have charged with firearm smuggling. Is it a Federal matter or my decision?" The answer was given this way citing USA vs. John Wilkes Booth. "John Wilkes booth rides up to your business on a very tired horse. He says (or otherwise indicates) he has shot someone, even the President. That he had dropped his gun and needed a replacement and ammunition. The subject had not been convicted of a crime, yet. Therefore it would be legal as a Federal Licensed holder to sell him a firearm." What the Government expects of a licensed person is to uphold the law. Be the final decision maker. To block Mr. Booth or anyone who otherwise might inflict harm on the Public, the People, and the Government of the United States. An example would be Defendant <u>Exhibit 5.</u> Such investment of the licensee requires complete transparency. Access 24/7 to all his records, tap his phone, bank accounts, and property including one's home. 2 (Id) Defendant was active from 1968 to April 7, 1996, as a consultant to the US Treasury, FBI, LQB, Border Patrol, Interpol, Scotland Yard, and other agencies of government worldwide. <u>Exhibit 5.</u> His current activity is on record by past President Donald J. Trump, Secretary of the Navy, Secretary of Defense, Secretary of State, Treasury Department, a Senator, Congressmen, and counterparts of two additional countries where our National Security is under threat. His experience with <u>Plaintiff Exhibit 3,</u> is absolute.

The payment of a debt in this case can be only accepted if unsolicited; considered honest; and in writing. This satisfies GCA (Gun Control Act) and Federal Firearm License Regulations. The Defendant sees no reason why FirstBank (nor anyone else) should be restricted from satisfying the debt before this court. <u>Exhibits 1 and 4.</u>

<u>Plaintiff Exhibit 9</u>, raises a Federal question in the statement of Fact. The Defendant does not pose a Federal question as the alleged declaration of debt was made to the Small

United State vs. Karl Lippard          23-cv-01078-MDB

Business Administration. Instead, the defense relies on representations made in Defendant <u>Exhibits 1 and 4</u> to be authentic.

1) Id. FFL § 922(d).
2) **DOJ FFL Sec 923 1, (g)(1)(B).**
3) GCA "In a 1986 amendment, FOPA added an explicit mens rea, or intent, requirement to the GCA's penalty provisions. Id 219. Accordingly, the GCA now imposes its criminal penalties for either knowing or willful violations, depending on the provision. Id 220. A violation is made knowingly when the person knows the facts that establish the offense. Id 221. Under this standard, the government need not prove that the defendant knew his behavior was illegal. Id 222. This is so, according to the Supreme Court, because of the "background presumption that every citizen knows the law," thus making it "unnecessary to adduce specific evidence to prove that 'an evil-meaning mind' directed the 'evil-doing hand.'"

Plaintiffs Statement of Facts

Defendant Response

1. The Defendant denies the amount stated and is misleading the Court. The $176,390.74 is comprised of false information and fraudulent representation of FirstBank to the SBA. Plaintiff's <u>Exhibit 9</u> "Addendum" has a date of <u>May 8, 2018,</u> of debt assignment to SBA of $128,702.61. The Instruction for loan assignment was not made until <u>February 15, 2023.</u> The basis for the Defendant's debt of add-on Treasury fees is invalid.

2. <u>Defendant Exhibit 4 (7)</u>, is an email letter dated <u>June 6, 2018,</u> from the law firm of FirstBank. The owners are the law firm Lewis- Roca who came with a settlement offer. Further, in that string is a second settlement offer made on <u>May 9, 2023.</u> Plaintiff <u>Exhibit 9</u> presents a Federal matter of Exhibit authenticity and debt claims.
a) How is it that an assignment to SBA <u>Plaintiff Exhibit 9 "Addendum"</u> was made on the same day as <u>Plaintiff Exhibit 6,</u> May 8, 2018? What is the exact date of the SBA payment to FirstBank of $128,702.61?
b) <u>Defendants Exhibit 4-06</u> recites an offer by Defendant to settle by "7 days or 20 June 2018." Page 07 is FirstBank response to the settlement dated June 6, 2018.
c) Plaintiff <u>Exhibit 9</u> wishes the Court to believe that the FirstBank attachment dated 2/15/2023 is an oversite.3 (Id) Defendant Motion Exhibit 1, shows the partner who tried the FirstBank civil case against Defendant and writes on May 10, 2023 "agrees to prepare documents for signature" in which (Defendant Motion Exhibit 1, page 2, item 1, of email communication to and from FirstBank Trevor G. Bartel) it recites the amount of $128,702.61. The lawful amount of the debt. If FirstBank has no interest in paying the debt, why propose it?

Therefore, does Plaintiff wish the Court to believe that Plaintiff <u>Exhibit 9</u> documents submitted occurred in 2018? The Defendant contends that the debt was

Case No. 1:23-cv-01078-MDB   Document 19   filed 10/02/23   USDC Colorado   pg 4 of 12

United State vs. Karl Lippard          23-cv-01078-MDB

still in possession of FirstBank in 2023, and an agreement was reached as stated to pay the amount by May 10, 2023. Further, the amount of Treasury and other add-on fees in <u>Plaintiff FACTS 1</u>, is based on wishful information. Treasury nor anyone else has ever attempted to collect this debt; or make a payment schedule. The lawful debt is acknowledged. Plaintiff <u>Exhibit 8</u> shows an assignment date of March 7, 2023. Or was it Oct 26, 2022, as the document is double-dated? <u>The ADDRESS OF THE DEFENDANT on the document too is incorrect.</u> If sent, it was never received. Public information as to the Defendant's address is listed on Google, his Federal license is issued BY the Department of Justice, and his Driver's license in Colorado is registered. Taken as a combined observation, no activity has taken place since May 8, 2018, other than FirstBank's proposal to pay the debt. No document of collection. Only documents in Defendant <u>Exhibit 1 and 4</u> requesting relief of FirstBank to conclude the subject loan as a possible mistake.

3. Defendant agreed and the loan was represented "as an SBA Loan" for $150,000.00 administered by FirstBank. It was the SBA's 7(a) loan program and not FirstBank's program as administrator. The SBA provided as it declares as an "SBA Loan." It offered protections from illegal activity known to exist by all BlackRock-controlled felony violations and fined banks: Defendant <u>Motion Exhibit 3</u> Vanguard/Blackrock 7 page 2, BANKS, are listed. Nearly all major banks have been fined by DOJ et al many billions of dollars <u>each</u>. While FirstBank's activity was found somewhat unusual, Defendant was unable to find any violations of Banking regulations when moved there. The "SBA Loan" was the Defendants' protection from banking illegal activity. And unlike other SBA Loans, the Defendants' business is regulated by GCA and Federal Laws. Violations are to be reported under the penalties therein specified. The Defendant is a Federal Licensed Firearm and Ammunition Manufacturer of international notoriety. A worldwide consultant. The Defendant relied on a small "SBA Loan" to jump-start programs strictly involving National Defense. (Shown in Motion Exhibit 3) With large assets, neither the Defendant nor bank regulators would approve those to be put at risk for a small loan. Nor can it be explained why the SBA loan was called viewing <u>Defendant Exhibits 2 and 3</u>.
4. The Defendant has always considered a SBA Loan to have been paid as no actions were taken. Nor would the Defendant allow any such debt to be dismissed as a lawyer in Defense might. The Court suffers from a Pro Se as a result because he is under oaths of obligation. Military Oath to country " that I will support and defend the Constitution of the United States against all enemies, foreign and domestic; that I will bear true faith and allegiance to the same; and that I will obey the orders of the President of the United States," That I will uphold the laws of the United States I am entrusted with as a Federal Licensed Manufacturer. As a Masonic Past Master, the oath is in part, "That I (he) will not cheat, wrong, nor defraud, anyone, out of the value of anything, knowingly, nor permit it to be done, if within my (his) power to

Case No. 1:23-cv-01078-MDB   Document 19   filed 10/02/23   USDC Colorado   pg 5 of 12

United State vs. Karl Lippard                23-cv-01078-MDB

prevent it." (An oath that protects foreign government commitments requiring nothing more than a Masters word or hand.) Once these obligations are known, the Defendant is predictable in this Court. There remain no facts omitted or disregarded in this matter to the Plaintiff. FirstBank wishes to be dismissed and offers to pay the debt. The Defendant must consider such a request from a Federal law point of view. A personal decision regardless of damages cannot be considered in the bank's request. Now under this Court jurisdiction, a Motion to accept their offer has been tendered.

5. The Plaintiff states the SBA purchased the loan on February 20, 2018 (Id2.) Not executed until February of 2023? The Defendant requests a copy of any payment record to FirstBank as settlement offers on June 10, 2018, and May 9th, 2023 do not support such a claim. Claims made by FirstBank to SBA is a Federal matter. The contract made with FirstBank to pay the debt the Defendant claims to be valid.

6. Defendant denies SBA purchased the 7(a) Loan Guarantee in its <u>Exhibit 9</u>. The Defendant asks for proof of payment to FirstBank. No such document has been produced. No such bill or notice to the Defendant has ever been received.

7. Defendant claims "Treasury assessed a fee of $41,478.74 ." The date and documents of such assessment have not been disclosed. If based on Plaintiff <u>Exhibit 9</u>, the Court should re-examine Plaintiff's claims.

8. The Plaintiff's assertion has no foundation. No document has been produced to show SBA referred the Debt to Treasury. "Treasury was unable to collect the debt," is hearsay. If <u>Exhibit 9</u> were true, then the date would have been after February 15, 2023. "Treasury collection efforts," do not exist. There are no costs associated with collection that were never attempted.

9. Defendant asked only in a Motion to Dismiss, for the Court to "allow" FirstBank to pay the debt it offered to pay. The Defendant provided background in which the Court would need to MAKE a decision. Rule 12(b) provides for what Defendant believes does not exist, and that is circumstances in which Defendant cannot make the decision; alone. Nor can present more to the Court than that which was presented in Motion. The Defendant can neither demand nor suggest anyone pay the debt, but rather poses a question to the Court, "if it opposes or accepts" a payment offered from FirstBank. As Pro Se, Federal Law governs the Defendant's actions. Not personal comfort or gain. The Plaintiff's position however is well taken. As to alleged crimes, FirstBank's request to be excused from Defendant liability by way of payment in full closes the matter. As expressed in the opening statement such offers must be considered by Defendant. A requirement of "Clean Hands" must be present to accept. If the Court does not object to the debt being paid in Motion, the security of the Defendant if not satisfied will NOT removed. The civil matter thus can be closed.

10. Defendant declares an agreement was made in Motion <u>Exhibit 1</u> dated May 10, 2023, in which Defendant stated: "Yes," in response to settle. That is a binding contract.

Case No. 1:23-cv-01078-MDB   Document 19   filed 10/02/23   USDC Colorado   pg 6 of 12

United State vs. Karl Lippard          23-cv-01078-MDB

Further, the Plaintiff acknowledged "a willingness to renew and earlier offer." No response was received on the counteroffer in 2018. Motion Defendant <u>Exhibit 1</u>. <u>Exhibit 4</u> covers full communication. The Defendant does NOT believe there was any error as the partner of the law firm Trevor Bartel handled the Civil case against the Defendant, and took time to review a previous email communicated by settlement offer from Connor A. Flanigan that also tried the Civil case who at some point left the firms employ. That no law firm reconfirms a payment of $128,702.61 from a bank it owns, without careful consideration. As Plaintiff <u>Exhibit 9</u> shows, the first offer to settle was after the "Addendum" date shown, and the second offer reconfirmed after the document <u>Exhibit 9</u> execution date in January 2023 was signed. The Defendant can only rely on FirstBank's generous offer to pay the debt communicated to him. Considering Federal matters of declarations in Plaintiff <u>Exhibit 9</u>, it would be in the best interest of all parties to close this matter in favor of FirstBank's offer to Defendant.

11. The Defendant supports the fact.

## Answer to Plaintiff's Argument

I.

The Motion to Dismiss was offered as payment by another who unsolicited asked to do so. FirstBank is not a party to the case by assigning the debt to SBA in Plaintiff <u>Exhibit 9.</u> The document is a Federal matter unless the Plaintiff brings it.

II.     Rule 12(b) and Fed R. Civ P. 12(b)(6) Huxall v. First State Bank Motion to Dismiss is satisfied. Motion <u>Exhibits 2 & 3</u> show no cause by which this debt should have arisen. Who caused this debt? And why? The People of the United States wish to know. The Plaintiff wishes the debt paid. It can be stipulated that Defendant will remain liable to pay any remaining loan debt if the bank defies the order, breaches its contract to do so, or the Bank becomes defunct and unable to pay. There is that risk. But the Defendant presents none.

When Defendant questions bank activity and determines unlawful activity, an offer to settle comes under his purview to uphold the law as a licensed Federal Firearms Manufacturer. The danger is ever present to subvert at every opportunity and more especially the Defendant.3 (Id) Therefore in settlement, the text is important showing no compromise to the law. Defendant <u>Exhibit 1,</u> to FirstBank page 1, line one states: "I just thought the last bit concerning employees should be more "tactful." Blackmail, coercion, and subversion are not actions in which money can be accepted by a Federal Firearms Licensed person. The text must be acceptable to the Defendant to establish the intent of the offer. Mens rea. In the response to FirstBank on May 10, 2023, Defendant <u>Exhibit 1</u> recites only a suggestion in the text. It would accept the wording however as is. The unsolicited offer to settle for the full amount due suggests a level of bank re-examination

Case No. 1:23-cv-01078-MDB   Document 19   filed 10/02/23   USDC Colorado   pg 7 of 12

United State vs. Karl Lippard       23-cv-01078-MDB

that may have caused the loan to be called prematurely. A low-level mistake must be considered to have taken place by the Defendant. Such payment however would have to be made to the DOJ. As for the Defendant, in this payment consideration, his losses are waived.

Further, the Defendant pleas no defenses but rather poses a question in Motion. If FirstBank's offer of payment conflicts with this Court's proceeding. The plaintiff's references are well-founded but do not address any dismissal of payment when offered. Given Plaintiff's <u>Exhibit 9,</u> it raises questions as to the actual debt claimed, by Plaintiff. Federal matters would be resolved under that. What part of any payment solution offered does not satisfy the Plaintiff?

The Defendant never denied the debt nor attempted to waive it. He has claimed Breach of Contract and damages resulting from that. The assessment of add-on debt by the Treasury for preserving the law raises questions about the word " Justice." Is a Federal Court a source of revenue for Treasury; or a place of Justice? For $88,000.00 the United States has been put at extreme risk. Arguably life has been lost. Our National Security is damaged possibly beyond repair. Our ability as a nation is at extreme risk and cannot supply itself in times of war. Many individuals and banks profited by blocking this loan payment. Blocked loans from others and transfers of capital for our National Security screams of accountability. Not compounded fees on the Defendant.

Plaintiff <u>Exhibit 3.</u> Treasury if it made such an assessment, it should be ashamed. If it ever had contacted Defendant, then possibly Defendant <u>Exhibit 5</u> and others should be pulled up and read.

"Plaintiff's Alleged Allegations as true:" Defendant claims allegations are not relevant to the Motion to Dismiss by payment proposed. In answer to allegations, Defendant does answer.

(1) True.
(2) True.
(3) True. Unlawfully.
(4) True.
(5) False. Not proven nor documented.
(6) False. Not proven and is a Federal matter on its face.
(7) False. Not proven and is a Federal matter on its face.
(8) False. If so judged.
(9) False. Not proven by document and declared a false declaration.
(10) False. Treasury has no costs nor can prove up any work effort.
(11) False. Treasury has made no collection efforts.
(12) DOJ fee should be waived. The case should not have passed SBA or Treasury.
(13) True. However, Defendant surrendered all Company assets of over $397,000.00, his home whereby a bank profited more than $85,000.00. (in which a Class Action

Case No. 1:23-cv-01078-MDB   Document 19   filed 10/02/23   USDC Colorado   pg 8 of 12

United State vs. Karl Lippard          23-cv-01078-MDB

DOJ suit has been awarded.) A car, (in which DOJ has assessed a damage award against the same bank.) And legal fees of over $25,000.00 in Chapter 13 Defense. (An attempt to gain $700 million in patents for an SBA debt of $69,000.00)

In looking at item (13), what part of this case added to that makes sense? And the damage to the United States may not be repairable. NOT REPAIRABLE.

The Defendant does not, nor has, challenged the debt. He has not been delinquent believing the debt was paid by FirstBank. With a declared damage amount above $100 million in a settlement document in June 2018, FirstBank offer to pay the debt was understandable. FirstBank's offer was thus reaffirmed, and a Motion was filed to Dismiss in good faith. To accept payment for Court economy and wasted effort stems from many issues. If not for SBA and Treasury noncompliance in the collection procedure, the debt would have been settled at the time of notification. Did the Statutes of Limitations run out? Unsure. If legal the Defendant would not allow that nor use it. While discovery continues in part due to recent Plaintiff disclosures, payment by FirstBank if so ordered would close the matter of debt without further damage to the Defendant nor prolong this Court for no purpose.

III.    FirstBank is NOT an indispensable party in this case. The Motion to Dismiss is to allow a payment proposed by FirstBank. If allowed, and with no objection for cause, the case can close. The Defendant does not depend on a favorable decision, however. He just cannot accept money that may result in loss of Federal License or that might conflict with the Court. The payment cannot be construed as personal income. The Plaintiff has taken the position and opposes the payment due, being paid by another party. The payment could have been Motioned by some other party including the Justice Department. Would there be an object then? Defendant claims unless paid to the DOJ directly where he is not party to that, any funds paid directly to him could affect his Federal license to do business. The Court may take the position of the Plaintiff for some reasons, none of which have been offered here. The Defendant is under Federal License law. If he perceives a law within his purview has been broken he can accept no decision, even favorable to him. Such has been the cost of defending the law over the years of more than $3 million in unrecoverable legal expenses. It is the price one must pay if a John Wilkes Booth appears at your door. And he has; several times before. Defendant <u>Exhibit 5 FBI.</u>

## Conclusion

Defendant does not assert any defenses under Rule 12(b) nor any obligation to pay the debt by another party. But willing to accept if offered. He states he is governed by Federal Firearm Regulations, Criminal, and GCA laws. The Defendant claims this case has been brought by many errors. It could be said some stem from a banker's poor decision;

Case No. 1:23-cv-01078-MDB   Document 19   filed 10/02/23   USDC Colorado   pg 9 of 12

United State vs. Karl Lippard            23-cv-01078-MDB

another in the delay of service in Plaintiff <u>Exhibit 9</u>; the transfer to Treasury and it not doing its work; and finally down to this court that suffers with a tainted case that could go on if allowed for some years. An opportunity to close the case with an offer from FirstBank is in Motion to Dismiss to save the Court time and unnecessary legal which can be seen in this case. The debt itself of $128, 702.61 is not disputed as it has been awarded. The Defendant grieves because as stated in Civil Court, the matter could have been settled for $150.00 in court-ordered mediation which FirstBank refused to do. At what point does this stop? The Defendant states in Motion that it should stop here. Federal Firearm License laws in this case are satisfied. The Defendant would seek Court relief from any perception of Federal Firearms License law violations with a debt being paid by anyone.

Accordingly, the Defendant believes, with conditions the Court may order, that the Motion be accepted.


Karl C. Lippard, Pro Se

By   s/Karl C. Lippard

   2544 Patriot Heights

   Colorado Springs, CO 80904

   719-444-0786

   Email: karl@karllippard.com



   Cole Finegan

   United States Attorney

For:   William B. Gillespie

   Assistant United States Attorney

   United States Attorney's Office

   1801 California St., Ste 1600

   Denver, CO 80202

   Tel: 303-454-0100

   Email: william.gillespie@usdoj.gov

United State vs. Karl Lippard          23-cv-01078-MDB

**Attachments: Defendant Exhibits 4 and 5.**

United State vs. Karl Lippard          23-cv-01078-MDB

10 | P a g e





# Envelope

**What is the weight limit for the FedEx® Envelope rate?**
Eight ounces — including the FedEx Envelope, airbill and contents (up to approximately thirty 8½" x 11" pages). If it exceeds the gross weight limit, a higher rate will apply.

**What can be shipped in the FedEx Envelope?**
This envelope is designed for documents. Contents should be compatible with the container and packed securely to help assure safe transportation with ordinary care in handling. Shipments within the U.S. with a value greater than US$500 should not be shipped in this envelope. International shipments with a value in excess of US$100 for carriage or customs should not be shipped in this envelope. Do not send cash, cash equivalent or other prohibited items. This envelope is for FedEx Express shipments only. Any other use is prohibited.

**What is the FedEx limit of liability?**
**For shipments within the U.S.**, FedEx liability is limited to US$100 for loss, damage, delay, misdelivery or nondelivery unless you declare a higher value and pay an extra charge. The maximum declared value for the contents of this envelope is US$500. See the current FedEx Service Guide or the FedEx® US Airbill for details.

**For international shipments**, FedEx liability is limited to US$100 for damage, delay or loss of shipments by surface or air and may be further limited by certain treaties, including the Warsaw Convention, typically to US$9.07 per pound. See the current FedEx Service Guide or the FedEx® International Air Waybill for details.

**Want more information?**
Go to **fedex.com**, or call 1.800.GoFedEx 1.800.463.3339 for U.S. domestic shipments, 1.800.247.4747 for international shipments. Call your local FedEx office if you are outside the U.S.

© 2005 FedEx 155477 REV 9/05 RT

**FedEx® Express**

**Extremely Urgent**

100% Recycled Paperboard® MINIMUM 35% POST-CONSUMER CONTENT