## Missing documents

| | |
|---|---|
| From | LippardHoldingsLLC@proton.me <LippardHoldingsLLC@proton.me> |
| To | William Gillespie DOJ<William.Gillespie@usdoj.gov> |
| Date | Monday, October 16th, 2023 at 2:12 PM |

**FILED**
UNITED STATES DISTRICT COURT
DENVER, COLORADO

**OCT 19 2023**

JEFFREY P. COLWELL
CLERK

10.16.2023

Mr. Gillespie,

In a review of documents as per my letter to DOJ  Friday 10.13.2023, I have discovered in disclosures to Plaintiff, that Exhibit 8 has two pages missing from document number 416. I have entered copies of those in my Exhibit book and numbered them 417B and 417C to keep the document numbers continuous. As the letter dated 5.22.18 is to the Law Firm that represents/owns FirstBank, these two missing pages have wide-ranging implications. And as the law firm never replied to this letter, it stands to clarify if not confirm Actus Reus and Mens Rea, exist. Further, it supports our position in the case before this court. Breach of Contract page 0417. It also claims the Firm caused the legal I have denied in this case page 0416. The missing page 0417B asserts all could have been averted for $150.00 in mediation and that I supplied a bound evidence package (page 0416) for the CEO Jim Reuter to attorney FirstBank attorney Connor Flanigan. Given in Court to give to CEO Reuter for examination. Actus Reus is claimed here on page 0416.

So for the DOJ in Washington to disclose Federal Witness Tampering evidence, pages of this very important document were discovered missing. Thus I have attached those here under Discovery and Disclosures requested in this case. Hopefully, in the thumb drive, **all numbered pages** were received. If NOT, please advise and I can resend all.

Also, I have prepared a four-page "Key to Documents" for DOJ, AG Washington of these Exhibits. (And others that belong to the Federal matter.) No doubt there will be downstream activity.  It might be helpful if you have a copy to aid in fielding without pause what they may be looking for. Until they request and receive their copies from me or the Court. If not please discard or use it at your pleasure remembering I must wear two hats. My hat, however; I am not often privileged wear.

Sincerely,

Karl Lippard
719-444-0786 office
719-439-4463 cell

CC: Documents copied the Court. Originals mailed to Plaintiff of attachments.   *23 - CV - 01078 - MDB*

Sent with Proton Mail secure email.

**6.88 MB**   2 files attached

Exhibits numbered pages 10.16.2023.jpg  6.85 MB   Key to Defendant exhibits 8.24.23.docx  26.17 KB

*0  0416*

5.22.18
Lewis Roca Rothgerber Christie LLP
Conor Flanigan
1200 Seventeenth Street, Suite 3000
Denver, Colorado 80202

Subject: Legal fees and representation˙

Conor,

Please find my response to the court concerning legal fees you have charged. I would like to give
your firm an opportunity to revisit those claims and revise before we litigate the matter. They
cannot be supported.

Second, the case will be appealed of course. But we require about five additional law firms
including one for legal malpractice. Those will come in due course.
The malpractice side stems from your testimony to the court last 8 May 2018.

You testified that Jim Reuter "Knows nothing about this case. He doesn't deal with $80,000.00
matters."

First you are correct he normally would not. However it does when transgressions under his
management has cost his bank in excess of $100 million dollars to date.

Second, I gave a full evidence package to Trevor for Jim Reuter to review. So either you misspoke
as I allowed in court reply OR, Trevor did NOT give the package to bank president Jim Reuter
which brings us to malpractice, liability to your client and legal coming of a kind never seen before
in this state. So I ask you now, did Jim Reuter get that evidence package or not?
If the answer is NO, then immediately liability transfers to your firm. To be clear that today is $20
billion in final negotiation with one country; $46.92 million for India in final; $65 billion for the
United States and possibly $1.05 billion this afternoon. Any of these fail to close because your
firm failed to give Jim Reuter that evidence package and that liability sir passes to your firm
immediately upon notification. And of course we can prove it up today as we would have done
privately to Jim Reuter had that package been given to him.

If Jim Reuter WAS given the package then he will be the focus of two litigations. Employee Kyle
Wilson will have at least two as well. And then we proceed up the chain until we find the source
of the problem.
If either of these two gentlemen have retained your firm as counsel please advise soonest. However
if we cannot separate malpractice then your firm will be a join party to the litigations coming and
your firms counsel will need to be named for correspondence.

Aside from what you believe is an $80,000.00 case, your firm has caused all the legal coming for
your client(s). Generally mediation is where grievance is aired by both sides and a settlement is

0 041

reached. You testified before the court that mediation was a waste of time, and a number of other assertions for which you have made a decision for your client to endure public disgrace and loss of business for about 10 minutes with someone who could spell bank, in mediation.

Karl Lippard Designs articulated in 2016 before any bank issues what the bank was doing to harm its business. We asked for a meeting higher up the chain and was denied. The package given to Trevor was to get that information up the chain so First Bank could take action on their own to fix the problem. Once done our business could possibly return to a profitable alliance. Even after mediation.

One assumes a successful bank to be honest and therefore would not tolerate such activity claimed. Once apprised and evidence proves the adversary's position, the matter is addressed and fixed. If Jim Reuter was denied that opportunity to examine potential wrong doing that can cause his bank harm, then a liability exists from two parties for the fiduciary who failed to deliver that information.

For the sake of argument say Jim Reuter DID get the package and you were mistaken. Failure to discuss professionally or mediate would be a waste of time you said in court. But lawyers lie. The two adversaries must meet to avoid mistakes. Two that have risk in the outcome. Now granted when Wachovia Bank says we are going to "sue you forever and get your patents," and Citi/Specialty Bar says "We are going to bankrupt you and own your patents for free," then we know for sure what they were after at the highest level. (They both lost by the way and one broke up and sold.) When your client SAYS they are going to do the same thing, at the lowest level in the bank, then what do YOU see? You see a loan that a bank will not allow paid, and for $80,000.00 you go after $700m in patents. (In final negotiations on that sale is taking place today.)

So mediation identifies purpose. Are patents the intent openly stated previously noted? Or has a mistake been made in our bank that needs to be fixed? Once we identify the person or the bank position supporting my claim then all falls away but that person, or Bank.

There are many documents but one in particular given to the bank. A $1 Billion dollar Cash Backed Standby Letter of Credit. For your edification that means $1 billion dollars will be set aside in cash in another bank to back any loan as a guarantee. A no lose situation. A Bank loans 50-75% on the cash backed paper, brokers some, AND uses the remainder for bank financial gain. They retain deposits, charge interest, and all guaranteed by cash set aside for the named company. When your client bank passes on this and keeps a debt of $80-100k is madness. And when there is $9 billion more in $1 billion dollar blocks your client bank could make huge sums just brokering. But your client didn't. And THAT is what ANY bank president wants to examine.

But is that all? No. Your bank client has private communications between our company and Secretary of Defense. We have a dangerous situation in which our country cannot supply itself with ammunition in time of war. It has a seriously dated production plant slated to close. I proposed to SecDef to relocate some 13,000 families to the Colorado Springs area. To provide jobs, homes, and pointing at our bank, banking for all of them. I pointed out about $4 billion in mortgages for the bank......NO? Not interested? Really?



So this business is not $80,000.00 Conor. It's about banking. Who was it that stopped this business from coming to this bank? Who? Well we have false documents presented to this court. Perjury on the witness stand. False testimony and fraudulent documents presented in a second court, there to protect patents and personal asset this bank officer told me (some in print) the bank was after. Patents for $80,000.00.......And you testify to the court that Jim Reuter DID NOT have any knowledge of this case? Really? I waited months for him to spot and clear this problem BEFORE further damage to our firm or your client could occur.

We need to know if your client bank president Jim Reuter received the document package given to Trevor for him. Trevor affirmed he would. As no action or communication was received during the period up to pretrial or mediate suggests a number of things. These banking decisions were not to do harm, law firm, whatever, until the matter is resolved. Therefore we must litigate all those whose intent then we will pursue those for damages proven today. If the Bank will not police its own undisputed **$392,236.14 of lost inventory and other damages to be proved.** Those are your corrected legal fees, plus

What Jim Reuter was supposed to be looking at in those documents you say he never received and knows nothing about, was the allegations made and proved up in those documents. A mediation lasting in my view if Brain Larson was doing it would be 10 minutes. Complete resolution. Sure could take an hour elsewhere. $150.00? Is that all that your client is worth; $150.00? But your firm never made any attempt to correct false documents given to courts. Tried to block evidence to prove our case, refused mediation until pressed that court order it; filed a Summary Judgment without any notification to the defendant. Your fees were not earned Conor. A mediation should have occurred and still could.

Result of positive mediation would have been:
1. Bank help with mortgages of $4 billion plus in the area for 13,000 families.
2. Offer new bank accounts for these people.
3. Handle our banking needs of more than $100 billion.
4. Any other bank opportunities the bank could present.
5. Sort out the loss from UCC filing and return what has not been sold.
6. Clear out the offending employees who brought this bank to such a legal position.
7. Or, conclude our business amicably. An employee problem and not the banks. Issue resolved under NDA.
8. Done..... $150.00.

End of story......right up to where these bank employees continue to cause long term damage to our company, the United States and her allies. That exposure will follow Wachovia, Republic and Mercantile banks.

Right now we get ready for appeal. Personal law suits from at least two adversaries will begin. Charges remain: Blackmail, fraud, conspiracy to commit fraud, subversion, coercion, perjury, breach of contract as starters. As public as it gets. Every single person. First Bank would be welcomed as co-plaintiff. A smart move that would be. Smart move to protect itself.

But your client failed to mediate. You testified your client was to be represented by Kyle Wilson? Really? Mediation decided by Kyle Wilson? Sticking to that assertion? Then declare you will receive service for Kyle Wilson. Pending no response from Jim Reuter, are you receiving his service him as well? Or as co-defendant what firm will represent you both?

4/7c

Thank you for your attention to this matter. As Jim Reuter was not named as a witness or the Plaintiff he is copied here to INSURE he gets the documents given to your firm for him and for his counsel. I still believe a Bank president can manage his business professionally if given the tools to do so. Until proven otherwise he enjoys my respect.

Your legal fees have not been earned. Our case is not frivolous and will litigate any award for fees including malpractice.

Sincerely,


Karl C. Lippard, representing Karl Lippard, Inc
2544 Patriot Heights
Colorado Springs, CO 80904

719-444-0786

cc: John Reuter

Attachments

1. Letter from United States Senator Charles E. Grassley
2. Defendant Document Key of documents file to be given to Jim Reuter
3. First Bank Recap 9/7/16

Karl Lippard Civil Action 23 cv 01078 MDB

O N41

# FirstBank Holding Co Bound Document Content list

1. 5.06.09  Hogan and Hartson Atomic Waste Energy patent letter.
2. 3.2011  Hogan & Lovells valuation email letter Energy $1 billion.
3. 9.11.11  Hogan & Lovells settlement of misrepresentation $81,813.57
4. 11.26.13 Key man Insurance payment docs **via FirstBank/Wells Fargo** exceeding $3m in premiums through 2016 listed here paid **via FirstBank/Wells Fargo wire transfers.**
5. 9.15.13  **Zurich** $375,000.00 **via FirstBank/Wells Fargo**
6. 11.06.13 **ING** $250,000.00? **via FirstBank/Wells Fargo**
7. 11.07.13 **Assurity Life** $2,602.**50 via FirstBank/Wells Fargo**
8. 11.17.13 **Security Life Denver** $342,200.00 **via FirstBank/Wells Fargo**
9. 11.12.13 **Security Life Denver** $555,000.00 **via FirstBank/Wells Fargo**
10. 11.20.13 **National Life Group** $139,810.00 **via FirstBank/Wells Fargo**
11. 11.25.13 **Lincoln Life** $250,000.00 **via FirstBank/Wells Fargo**
12. 5.07.14  **Genworth Life** $501,720.00 **via FirstBank/Wells Fargo**
13. 11.01.14 **Voya** $ ? **via FirstBank/Wells Fargo**
14. 11.20.14 **Life Ins Co of Southwest** $250,000.00 **via FirstBank/Wells Fargo**
15. **3.15.16  Zurich** $750,000.00 **via FirstBank/Wells Fargo**
16. **9.07.16  FirstBank recap to loan officer Kyle Wilson. Loan consolidation.**
17. 12.31.16 Financials for Karl Lippard Inc. Inventory lost to UCC (* Amount stated)
18. 6.20.17  LOC to Saudi Arabia $20 billion
19. 3.22.18  Letter to the Court. Denial of notice and filings being sent.
20. 4.23.18  Draft Trial Management letter to Plaintiff. **Citing damages. (* #29)**
21. 4.24.18  LOC UAI to KSA $20 billion. (* #19 <u>note date</u>)
22. 4.25.18  FirstBank Motion to exclude evidence. Case 2017CV31878
23. 4.26.18  Mediation schedule. FirstBank withdrew. (In possession of evidence package)
24. 4.26.18  Witness list showing collusion with other banks. **UBS Bank.**
25. **5.08.18  Summary Judgement**
26. **5.22.18  Misrepresentation letter. A critical evidence document.***
27. **5.25.18  Mediation refused my First Bank with Judge Crowder**
28. **5.29.18  LOC Eu 224 billion 20 pages (#24 witness UBS tampering)**
29. 6.06.18  FirstBank offered to settle and <u>pay the debt.</u>
30. 6.13.18  **Settlement response to FirstBank**
31. 6.16.18  **LOC proof of funds letters $65 billion as part <u>of Eu224 Billion.</u>** 33 pages. <u>UBS</u>
32. 10.0.18  Trial questions for the Plaintiff. Case 2017CV31878. <u>**Perjury.**</u>
33. 10.00.18 FirstBank Defendant Karl Lippard Inc document key to exhibits.
34. 1.07.19  Lippard Holdings LLC Corporate Minutes.

## Letters of Credit

1. 4.02.16  Pending LOC CRC $124 million.
2. 4.21.16 LOC National Standard $130 million but could change.

Karl Lippard Civil Action 23 cv 01078 MDB

O 0419

3. 4.21.16 LOC National Standard $130 million but could change.
4. 5.02.16 LOC CRC $124 million letter.
5. 5.19.16 National Standard Wells Fargo
6. 9.05.16 Cash Backed SBLOC CIIG Commitment letter 1 billion US Dollars via Wells Fargo acct.
7. 2.09.17 LOC Petra Capital $650 million
8. 6.20.17 LOC WHFPS to Saudi Arabia $20 billion
9. 4.24.18 LOC UAI to **KSA** $20 billion.
10. 4.25.18 LOC UAI to USA **Navy** $65 billion to start,
11. **5.11.18 LOC UAI Proof of Funds for Ships, Power Grid, and Saudi Projects Proposed. UBS Bank Swift acknowledgement for <u>Eu224 billion</u>. 20 pages inclusive.**
12. 9.08.18 LOC UAI for project **Nancy** $40 billion to start.
13. 5.22.18 Letter to FirstBank firm/owner Lewis Roca stating liability
14. 5.00.18 Senator Grassley concerning banks blocking funds. **Treason claimed.**
15. 7.22.19 Recap to City of Trinidad, CO
16. 5.01.21 LOC renewal **Saudi Arabia** projects $20 billion to start.