IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Maritza Dominguez Braswell**

Civil Action No. 23–cv–01078–MDB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

KARL C. LIPPARD,

    Defendant.

---

# ORDER

---

Before the Court are two motions. First, is Plaintiff's Motion for Summary Judgment. (["SJ Motion"], Doc. No. 62.) Defendant has responded in opposition to the SJ Motion, and Plaintiff has replied. (["Response"] or ["Response and Declaration"], Doc. No. 63; ["Reply"], Doc. No. 64.) Defendant further replied in opposition to Plaintiff's Reply.[1] (Doc. No. 65.) Second, is Defendant's Response and Appeal of Joinder Denial. (["Motion for Reconsideration"], Doc. No. 58.) After reviewing both Motions, related briefings, and relevant case law, the Court **GRANTS** Plaintiff's SJ Motion and **DENIES** Defendant's Motion for Reconsideration.

## STATEMENT OF THE CASE

---

[1] Though sur-replies are generally not permitted, the Court wishes to give *pro se* Defendant every opportunity to articulate his arguments and positions, and it therefore accepts Defendant's sur-reply.

The following facts are undisputed[2] unless otherwise noted.

*Background*

Defendant Karl Lippard is the owner of Karl Lippard, Inc., and was President of the company during the time relevant to this Complaint. (Doc. No. 62-1 ["Separate Statement of Fact" or "SSOF"] at 2 ¶ 7.) On July 3, 2013, in his capacity as President of Karl Lippard, Inc. (the "Borrower"), Defendant executed a promissory note (the "Note") in favor of FirstBank (the "Lender"), in exchange for a $150,000 loan (the "Debt"), guaranteed by the United States Small Business Administration (the "SBA"). (*Id*. at 1 ¶ 1.) On the same day, Defendant in his personal capacity executed an Unconditional Guarantee on the Note. (*Id*. at 2 ¶ 8.) Pursuant to the Guarantee, Defendant personally and unconditionally guaranteed payment to the Lender of all amounts owed under the Note and agreed to pay all amounts due under the Note upon the Lender's written demand (*Id*. at 3 ¶ 10.) The Lender disbursed $150,000 to the Borrower pursuant to the Note on July 5, 2013. (*Id*. at ¶ 11.)

*Default of the Note*

No issues with the Note arose until 2016, when the Borrower failed to make its June 2016 monthly payment until September 2016. (*Id*. at 4 ¶ 15.) To date, the last monthly payment the Lender received from the Borrower is the February 2017 payment, paid three months late in May

---

[2] Plaintiff set forth the undisputed material facts in a Separate Statement of Fact attached to its Motion for Summary Judgment. (Doc. No. 62-1.) Defendant did not address the Separate Statement of Fact in his Response, and instead included a section titled "Undisputed facts" in the body of his brief. (Doc. No. 63 at 7-10.) The Court considers Defendant's "Undisputed facts," but notes they are not a denial of Plaintiff's undisputed facts, but rather a submission of eight *additional* facts, all relating to Plaintiff's argument that FirstBank should be joined as a party to this suit. (*Id*.) Plaintiff argues these facts are immaterial. (Doc. No. 64 at 2.) Because Defendant did not respond to or otherwise dispute Plaintiff's asserted facts, the Court finds Plaintiff's asserted facts, undisputed.

2017. (*Id*. at ¶ 17.) The Borrower then missed its March 2017 payment, and all payments since. (*Id*. at ¶ 18.) The Lender sent a demand letter to Defendant, who had personally and unconditionally guaranteed payment, but no payments ensued. (*Id*. at 4 ¶ 21.) No payments on the amount due under the Note have been made since December 2017, when the Lender received $16,013.20 from selling the collateral secured under the Note. (*Id*. at 6 ¶ 28; *see also* ["SBA Transcript of Account"], Doc. No. 62-11; ["Defendant's Accounting"], Doc. No. 61-2.) The parties' respective accounting statements show $114,876.15 has been repaid to the Debt.[3] (*See* Doc. No. 62-11; Doc. No. 61-2.)

In short, the Note is in default and indeed, the parties do not dispute this. (*See id*. at 1 ¶ 4 ("Under the terms of the Note, Borrower is in default if it fails to pay monthly payments when due"); *id*. at 4 ¶ 20 ("At his deposition, Defendant testified that the Note is in default").) In fact, during several Court conferences, Defendant indicated as much. Still, Defendant takes the position that the Lender is responsible for paying the amount due under the Note. (*See, e.g.*, Doc. No. 63 at 6 ("Defendant believes [the Lender] is responsible for the amount due."); *id*. at 20 ("[The Lender] owned the debt and offered to pay it").)

***State Court Action and Assignment to the SBA***

Following default, the Lender filed a verified complaint in the El Paso County District Court against the Borrower.[4] (SSOF at 5 ¶ 22.) On May 8, 2018, the state court issued a final

---

[3] $98,862.95 was paid in monthly installments over the course of approximately four years, with the last monthly payment—the February 2017 payment—taking place in May 2017. $16,013.20 was paid on December 22, 2017, after the Lender sold the collateral secured under the Note.

[4] Defendant was not named as a party in the state court action because he had filed as an individual for relief under Chapter 13 of the Bankruptcy Code. The bankruptcy case was subsequently dismissed without discharge. (Doc. No. 62 at 3, n.1.)

judgment against the Borrower and in favor of the Lender, awarding the Lender $69,059.89 as the unpaid principal owed under the Note and $52,022.00 in attorneys' fees incurred by the Lender. (*Id*. at 5 ¶ 22.)

The Lender applied for the SBA to purchase the 7(a) Loan Guaranty in December 2017, and the SBA approved the purchase in February 2018. (*Id*. at 8 ¶ ¶ 39-40.) The Lender assigned the Debt to the SBA on April 10, 2019, and the SBA referred the Debt to the United States Department of the Treasury (the "Treasury") for collection on July 2, 2019. (*Id*. at 3 ¶ 13; 7 ¶ 32.) Between then and September 2022, the Treasury contracted Coast Professional Inc., a private collection agency, to collect the Debt. (*Id*. at 9 ¶ 45.) On August 20, 2019, Coast sent the Borrower a letter informing the Borrower: (1) the Debt had been referred to the Treasury; (2) the Treasury had contracted collections to Coast; (3) how much money was owed on the Debt; (4) how to pay the debt; and (5) how to dispute the validity of the Debt. (*Id*. at 9 ¶ 46.) Defendant responded to the letter, disputing the Debt and threatening Coast and the Treasury with litigation. (*Id*. at 9 ¶ 47.)

The Treasury referred the Debt to the United States Department of Justice ("DOJ") for litigation on September 27, 2022, making Plaintiff United States the present owner of the Note and Defendant's Guarantee. (*Id*. at 10 ¶ 48; 3 ¶ 12.)

***Settlement Discussions Between Defendant and the Lender***

The parties first discussed settlement in June 2018, following the state court action but prior to the SBA's purchase of the Debt. (*Id*. at 7 ¶ 35.) At that time, the Lender proposed forbearing collection of the state court final judgment in exchange for Defendant's and the Borrower's agreement to forgo any appeal of the state court final judgment, and to release any

4

claims they might bring against the Lender. (*Id.*) However, it is undisputed that Defendant rejected this offer. (*Id.*; Doc. No. 35-1 at ¶ 6.) Thus, when the SBA purchased the Debt in April 2019, the Borrower's and Defendant's obligations remained intact. (*See* SSOF at 8 ¶ 39 (noting the Lender was still owed the Debt).) Defendant reinitiated settlement discussions in May 2023, and though the Lender made an offer, (*id.* at 7-8 ¶ ¶ 36-37), no settlement was reached. (*See* Doc. No. 35-1 at ¶ 11 ("[T]he parties never agreed to a final settlement agreement").) In any event, the Court notes the 2023 settlement discussions are immaterial.[5]

*Procedural History*

Plaintiff initiated this case on April 28, 2023, under the Federal Debt Collection Procedures Act ("FDCPA"), 28 U.S.C. § 3001, *et seq.*, asserting Defendant is indebted to Plaintiff in the amount of $176,390.74 as of March 7, 2023. (*See* Doc. No. 1 at 10 ¶ 42.) Defendant filed two Motions to Dismiss, (Docs. No. 11; 28), both of which were denied by the Court on November 14, 2023. (Doc. No. 29.)

Defendant then filed a Motion to Join FirstBank Group et al ("FirstBank") as a party to the case pursuant to Fed. R. Civ. P. 19(a)(1)(B) and 20(a)(2) &(b)(2) on February 26, 2024. (Doc. No. 49.) The Court denied Defendant's Motion for Joinder on May 20, 2024, and

---

[5] The 2023 settlement discussions are immaterial for several reasons. First, it appears the Lender lacked the authority to enter into a settlement agreement. The SBA purchased the Debt from the Lender in 2019, long before Defendant reinitiated the 2023 settlement discussions. Second, no agreement was reached—once the Lender realized it no longer had rights to the Debt, it ceased all communications with Defendant before a formal settlement agreement was drafted or signed. (Doc. No. 35-1 at ¶ ¶ 10-11; *see also* Doc. No. 63 at 2 (Defendant says "last offering of settlement" was denied).) And third, even if the Lender had the authority and a settlement had been reached, any such agreement would have post-dated the SBA transaction, and therefore would have no impact on the rights the SBA previously acquired.

Defendant filed a Motion for Reconsideration soon thereafter. (Docs. No. 57; 58.) Following the close of discovery, Plaintiff moved for summary judgment on its claims. (Doc. No. 62.)

The Court now considers Plaintiff's SJ Motion and Defendant's Motion for Reconsideration.

## STANDARDS OF REVIEW

### I.   Summary Judgment

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of showing an absence of evidence to support the non-moving party's case. *Celotex*, 477 U.S. at 325. "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994) (citing *Celotex*, 477 U.S. at 325). The non-moving party may not rest solely on the allegations in the pleadings but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see also* Fed. R. Civ. P. 56(c).

"A 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986)). Whether there is a genuine dispute as to a material fact depends upon "whether the evidence presents a sufficient disagreement to require submission to a jury," or conversely, whether the evidence "is so one-sided that one party must prevail as a matter of law." *Carey v.*

*U.S. Postal Service*, 812 F.2d 621, 623 (10th Cir. 1987) (quoting *Anderson*, 477 U.S. at 251-52). A disputed fact is "material" if "under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998) (citing *Anderson*, 477 U.S. at 248). A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the non-moving party. *Thomas v. Metropolitan Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (citing *Anderson*, 477 U.S. at 248). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

When evaluating a motion for summary judgment, a court may only consider admissible evidence. *See Johnson v. Weld Cty.*, 594 F.3d 1202, 1209–10 (10th Cir. 2010). The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment. *Concrete Works*, 36 F.3d at 1517. However, this standard does not require the Court to make unreasonable inferences in favor of the non-moving party. *Carney v. City & Cty. of Denver*, 534 F.3d 1269, 1276 (10th Cir. 2008). The non-movant must establish, at a minimum, an inference of the presence of each element essential to the case. *Hulsey v. Kmart, Inc.*, 43 F.3d 555, 557 (10th Cir. 1994).

**II.   Reconsideration**

While the Federal Rules of Civil Procedure do not directly provide for a motion to reconsider an interlocutory ruling, district courts have broad discretion to reconsider their interlocutory rulings before the entry of judgment. *See Rimbert v. Eli Lilly & Co.*, 647 F.3d 1247, 1251 (10th Cir. 2011) ("[D]istrict courts generally remain free to reconsider their earlier

interlocutory orders."); Fed. R. Civ. P. 54(b) ("[A]ny order . . . that adjudicates fewer than all the claim or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment.").

"Notwithstanding the district court's broad discretion to alter its interlocutory orders, the motion to reconsider 'is not at the disposal of parties who want to rehash old arguments.'" *Nat'l Bus. Brokers, Ltd. v. Jim Williamson Prods., Inc.*, 115 F.Supp.2d 1250, 1256 (D. Colo. 2000) (quoting *Young v. Murphy*, 161 F.R.D. 61, 62 (N.D. Ill. 1995)). "Rather, as a practical matter, to succeed on a motion to reconsider, a party must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." *Id.* (internal quotation marks omitted and alterations incorporated). In other words, "[a] motion to reconsider should be denied unless it clearly demonstrates manifest error of law or fact or presents newly discovered evidence." *Id.* (alterations incorporated); *See Sanchez v. Hartley*, 2014 WL 4852251, at *2 (D. Colo. Sept. 30, 2014) (refusing to reconsider an interlocutory order where the defendants did not show "an intervening change in the law, newly discovered evidence, or the need to correct clear error or manifest injustice").

## ANALYSIS

### I.  Summary Judgment Motion

Plaintiff asks the Court to enter judgment in its favor pursuant to Fed. R. Civ. P. 56, arguing Plaintiff is entitled as a matter of law to (1) recover on the Note through Defendant as an unconditional guarantor and (2) collect the Treasury fee, DOJ fee, and costs for its collection efforts. (*See generally* Doc. No. 62.)

#### A.  Recovery of Promissory Note

To recover on a guaranty for a promissory note, the government must make a *prima facie* showing that (1) the defendant signed the note and the guaranty, (2) the government is the present owner or holder of the note and guaranty, and (3) the note is in default. *United States v. Petroff-Kline*, 557 F.3d 285, 290 (6th Cir. 2009); *see also United States v. Stock Asylum LLC*, No. 14-cv-1979-WJM-NYW, 2015 WL 638200, at *2 (D. Colo. Feb. 13, 2015) (finding Government is entitled to judgment in its favor on FDCPA claim where (i) Defendant signed promissory note and unconditional guaranty for a loan; (ii) SBA guaranteed half the loan; and (iii) Defendant defaulted on note). Once a *prima facie* case is established, the burden shifts to the defendant to prove the nonexistence, extinguishment, or variance in payment of the obligation. *Petroff-Kline*, 557 F.3d at 290.

1.  ***Prima Facie* Case**

First, it is undisputed that Defendant signed the Note on July 3, 2013 in favor of the Lender and, that same day, signed an unconditional guarantee personally and unconditionally guarantying payment of all amounts owed under the Note. (SSOF 1 ¶ 1; 2 ¶ 8.) Second, it is undisputed that the government (*i.e.*, Plaintiff) is the present owner of the Note and Guarantee.[6] (*Id*. at 3 ¶ 12.) Finally, it is clear the Note is in default.

Plaintiff argues it is a judicially established fact that the Note is in default under *res judicata*, or issue preclusion. (Doc. No. 62 at 9.) Issue preclusion applies when: (1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is

---

[6] Lender assigned the Debt to the SBA on April 10, 2019, and the SBA referred the Debt to the Treasury for collection on July 2, 2019. (SSOF at 3 ¶ 13; 7 ¶ 32.) The Treasury then referred the Debt to the DOJ for litigation on September 27, 2022. (*Id*. at 10 ¶ 48.)

invoked was a party, or in privity with a party, to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action. *Park Lake Res. Ltd. Liab. v. U.S. Dep't Of Agr.*, 378 F.3d 1132, 1136 (10th Cir. 2004).

      Here, as to the first and second factors, the identical issue of whether the Note was in default was finally adjudicated on the merits in the District Court for El Paso County, with the court holding the Note is in default. (*See* Doc. No. 62-9 (state court final judgment); Doc. No. 62-7 at 1 (granting summary judgment because "[t]he plaintiff's exhibits and affidavits clearly establish the various loan agreements, *the default* and damages.") (emphasis added); Doc. No. 62-8 at 1-2 (denying motion for reconsideration because "the only issues are whether there were promissory notes signed by the defendant that are now in default for nonpayment" and "the plaintiff has established the loans that were made to the defendant . . . are in default for nonpayment.").) *See also Dixon v. Richer*, 922 F.2d 1456, 1459 (10th Cir. 1991) (noting "federal courts accord preclusive effect to issues decided by state courts").

      As to the third factor, Defendant was in privity with a party to the prior adjudication—the Borrower—because he "assume[d] control over the litigation in which that judgment was rendered." *Taylor v. Sturgell*, 553 U.S. 880, 894-95 (2008). Though Defendant was not a formal party to the state court action, he nevertheless had "the opportunity to present proofs and argument" during those proceedings. *Id.* at 895; *see also* Doc. No. 62-8 (state court noting Mr. Lippard filed "various letters" presenting arguments on the issues); Doc. No. 62-17 (Mr. Lippard asking state court to reconsider judgment). In other words, Defendant already "had his day in court" during the state court action. *Taylor*, 553 U.S. at 895. This means the fourth factor is met as well—Defendant had a full and fair opportunity to litigate the issue of default in the prior

10

action, because he did in fact litigate the issue on Borrower's behalf. (Doc. No. 62-8; Doc. No. 62-17); *see also Dodge v. Cotter Corp.*, 203 F.3d 1190, 1198 (10th Cir. 2000) (quoting *Ashe v. Swenson*, 397 U.S. 436, 443 (1970) ("When an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.")).

In any event, the Court agrees with Plaintiff that even if issue preclusion did not apply, the record conclusively establishes the Note is in default. (Doc. No. 62 at 9.) The government may show that a promissory note is in default by introducing "a sworn transcript of the account or certificate of indebtedness." *Petroff-Kline*, 557 F.3d at 290; *see also United States v. Gervell*, No. 1:19-CV-01196-RM-KMT, 2019 WL 4084444, at *1 (D. Colo. Aug. 29, 2019) (finding allegations of default are supported by certificates of indebtedness). Plaintiff has submitted a Certificate of Indebtedness certifying that Plaintiff's "claim arose in connection with Defendant's March 2017 default on a $150,000 SBA-insured loan." (Doc. No. 1-10.) Defendant has also admitted under oath that the Note is in default. (SSOF at 4 ¶ 20; *see also* Doc. 62-20, Karl Lippard Depo. at 87:2-5 (when asked if "the SBA loan that [he] got from FirstBank that's the issue in this lawsuit" is in default, Defendant testified "I believe it is.").) Moreover, under the terms of the Note, the Borrower is in default if it fails to pay the monthly payments when due on the first day of each calendar month. (SSOF at 1 ¶ ¶ 3-4.) The record reveals the Borrower did not make its June 1, 2016 payment until September 14, 2016; did not make its February 1, 2017 payment until May 9, 2017; and never made its March 1, 2017 payment or any subsequent payments. (*Id*. at 4 ¶ ¶ 15-18.)

### 2. Nonexistence, Extinguishment, or Variance in Payment of Obligation

For the reasons set forth above, Plaintiff has established a *prima facie* case that it is entitled to recover on the Note. *See United States v. Konczak*, No. 14-CV-0673-CBS, 2015 WL 4607663, at *6 (D. Colo. Aug. 3, 2015) (finding "[t]he US has proved by a preponderance of the evidence that Defendants owe it a debt on the Note that they personally guaranteed" on the same facts.) Thus, the burden shifts to Defendant to show the nonexistence, extinguishment, or variance in payment of the obligation. *Petroff-Kline*, 557 F.3d at 290.

But Defendant has not met his burden. To the contrary, Defendant admitted the Debt is due, has not been extinguished, and the Lender never changed his payment obligations. (SSOF at 6 ¶ ¶ 29-30; *see also* Doc. 62-20, K.L. Depo. at 96:7-9 (Defendant testifying the SBA Debt still exists today); *id*. at 96:10-12 (Defendant testifying the Lender has never changed his payment obligation).) Though Defendant argues the Lender agreed to pay the Debt for him at some point, (Doc. No. 63 at 5), Defendant has not produced any evidence of such an agreement. *See United States v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001) (finding that where a defendant testifies that a third party paid debts for him, but does not offer any evidence, defendant cannot defeat summary judgment). At best, the record reflects discussions in 2018 about a possible forbearance, which was rejected by Defendant, and Defendant's counterproposal, which was rejected by the Lender. (Doc. No. 35-1 at ¶ 5-6.) Thereafter, the SBA purchased all rights under the Note, which as noted above, remained intact even by Defendant's own admission. (*See* SSOF at 3 ¶ 13; Doc. 62-20, K.L. Depo. at 96:7-12 (Defendant testifying debt still exists and payment obligations have not changed).).[7]

---

[7] Given Defendant's *pro se* status, the Court provided him ample opportunity to establish the Lender's agreement to forbear. (*See* Doc. No. 43 (allowing Defendant to file a joinder motion); Doc. No. 57 (denying joinder under Rules 19 and 20.) But Defendant has not produced any

Because Defendant has failed to set forth facts showing there is a genuine issue for trial, Plaintiff is entitled to recover on the Note as a matter of law. As of July 17, 2024, Defendant owes Plaintiff $100,801.08 in principal,[8] and $38,969.07 in interest.[9] (Doc. No. 62 at 12.) Plaintiff also requests post-judgment interest, as authorized by 28 U.S.C. § 1961(a). *See id.* ("Interest shall be allowed on any money judgment in a civil case recovered in a district court.").

### B. Recovery of Treasury Fee, DOJ Fee, and Costs

Next, Plaintiff argues the $41,478.74 Treasury fee and $5,291.75 DOJ fee should be charged to Defendant pursuant to 31 U.S.C. § 3711(g)(6). (Doc. No. 62 at 17.)

### 1. Treasury Fee

Any nontax debt or claim owed to the United States that has been delinquent for 180 days and is not in litigation or foreclosure at that time must be transferred to the Treasury. 31 U.S.C. § 3711(g)(1)-(2)(A)(i). Any agency collecting nontax debts may charge a referring agency a fee to cover the full cost of collecting the debt. 31 U.S.C. § 3711(g)(6). These fees may then be passed on to the debtor pursuant to section 3717(e)(1). *Id.* The Treasury charges federal agencies fees of 30% of debts that are delinquent by two years or less, and 32% of debts that are more than two

---

evidence or information to support his contentions. The 2018 discussions did not result in settlement, and the 2023 discussions are immaterial. (*See supra* note 5.)

[8] When the SBA purchased the loan, the remaining principal was $69,059.89. (SSOF at 8 ¶ 39.) However, under the terms of the Note, reasonable attorney's fees and costs incurred by the Lender in enforcing the Note could be added to the principal balance. (*Id.* at 2 ¶ ¶ 5-6; *see also* ["SBA Note"], Doc. No. 62-3 at 3 ("Lender may…[i]ncur expenses to collect amounts due under this Note…If Lender incurs such expenses, it may demand immediate repayment from Borrower or add the expenses to the principal balance.").) The Lender had incurred $31,675.84 in approved legal expenses when the SBA purchased the loan, and this amount, among other costs, was added to the principal balance. (SSOF at 8 ¶ 40.) The total principal balance is now $100,801.08.

[9] Interest continues to accrue on the principal amount at the Note rate of 7.38% per year. (SBA Note at 1).

years delinquent. (SSOF at 9 ¶ 43.) The amount of the fee is determined yearly by overall program costs, rather than based on the collection of a specific debt. 31 C.F.R. § 285.12(j).

Here, the SBA referred Defendant's Debt to the Treasury for collection on July 2, 2019. (SSOF at 7 ¶ 32.) The Treasury assessed a $47,478.74 Treasury fee on Defendant's Debt.[10] (*Id*. at 9 ¶ 44.)

Defendant asserts the Treasury is not entitled to fees because the Treasury did not attempt to collect the Debt. However, Defendant has not cited any authority limiting the Treasury's fees to the actual costs of its collection efforts. (Doc. No. 62 at 13.) In any event, the record establishes the Treasury did attempt to collect the Debt through Coast Professional Inc., a private collection agency. (SSOF at 9 ¶ 45.) In August 2019, Coast sent a letter to the Borrower informing it about the Debt, and Defendant responded to that letter disputing the Debt and threatening litigation. (*Id*. at 9-10 ¶ ¶ 46-47.) While Defendant states he thought Coast's collection efforts were a scam, (Doc. No. 63 at 13), his mistaken belief does not change the fact that the Treasury attempted to collect. (Doc. No. 62 at 14.)

## 2. DOJ Fee

The Treasury may refer a nontax debt to the DOJ for litigation. 31 U.S.C. § 3711(g)(4)(C). To pay the costs of processing and tracking civil and criminal debt collection litigation, the DOJ charges federal agencies fees of 3% of all amounts collected pursuant to its civil debt collection litigation activities. *See* 21st Century Department of Justice Appropriations

---

[10] Default occurred when the Borrower failed to make the June 2016 payment, so the Debt has been delinquent for more than two years. The Treasury's administrative fee is therefore 32% of the principal balance and accrued interest as of the date of the Certificate of Indebtedness, or $100,801.08 in principal and $28,819.17 in interest. (Doc. No. 62 at 13; Doc. No. 62-10.)

Authorization Act, Pub. L. No. 107–273, § 11013(a), 116 Stat 1758, 1823 (2002), 28 U.S.C. § 527 [Note].

Here, the Treasury referred the Debt to the DOJ on September 27, 2022 for litigation after the Treasury was unable to collect any payments on the Debt. (SSOF at 10 ¶ 48.) The DOJ assessed a fee of $5,291.75—or 3% of the total funds collected—on the Treasury, and the Treasury has in turn passed this fee on to Defendant. (*Id*. at 10 ¶ 49.)

Although Defendant does not appear to dispute this fee or the existence or amount of the Debt, (s*ee id*. at 11 ("The Defendant has never claimed there was no amount due to the SBA"); *id*. at 17 (Defendant does not object to $5,291.95 DOJ fee)), he continues to argue the Lender is responsible for the Debt and fees. (*See, e.g.*, Doc. No. 63 at 6 ("Defendant believes FirstBank is responsible for the amount due"); *id*. at 20 ("Fees and [c]osts are misplaced with the Defendant").) But for the reasons set forth above, the 2018 negotiations that predate the SBA's purchase never resulted in a settlement agreement, and the post-purchase negotiations of 2023 are immaterial. Plaintiff has met its burden as to the Debt, and the law clearly establishes the Treasury is authorized to pass on related fees to Defendant. 31 U.S.C. § 3711(g)(6).

### 3. Costs

With respect to costs, Plaintiff requests an award pursuant to the Equal Access to Justice Act (the "Act"), 28 U.S.C. § 2412. (Doc. No. 62 at 16.) Plaintiff seeks all costs for prosecuting this action, including, but not limited to, a filing fee of $402.00. (*Id.*) However, the Court has discretion on this matter. (*See* § 2412(a)(2) ("[A] judgment for costs . . . *may* be awarded to the prevailing party in any civil action brought by or against the United States") (emphasis added).) In determining whether an award of costs is appropriate, the Act encourages courts to consider

the parties' conduct. (*See, e.g.*, § 2412(d)(1)(B) (to obtain a judgment against the United States, prevailing party must show "position of United States was not substantially justified"); § 2412(d)(1)(D) (noting a willful violation of law or acting in bad faith may make an award unjust).)

Courts in this district have awarded the United States costs in cases where the other party failed to engage in litigation or acted in bad faith. *See, e.g., Conklin v. United States*, 812 F.2d 1318, 1318 (10th Cir. 1987) (district court's award of fees and costs to government, which was obtained on the basis of plaintiff's bad faith, was vacated after circuit court found plaintiff did not act in bad faith); *United States of America v. EP Construction*, LLC, No. 22-CV-02715-REB-KAS, 2023 WL 11969269, at *2 (D. Colo. Aug. 25, 2023) (awarding government costs equal to filing fee after entering default against defendant); *United States v. Gervell*, No. 1:19-CV-01196-RM-KMT, 2019 WL 4084444, at *2 (D. Colo. Aug. 29, 2019) (same).

The record here does not support an award of costs or fees in support of Plaintiff. Despite Defendant's *pro se* status, the Court finds he has been diligent in litigating this case and has neither filed frivolous motions nor acted in bad faith over the course of the proceedings. Moreover, given that Plaintiff's judgment already includes a Treasury Fee, a DOJ Fee, and post-judgment interest, the Court finds an award of costs unnecessary and unjustified.

## II.      Reconsideration Motion

Defendant asks the Court to reconsider its May 20, 2024 Order denying Defendants' Motion for Joinder FirstBank et al. (Doc. No. 58.) (*See also* ["Order"], Doc. No. 57; ["Motion for Joinder"], Doc. No. 49.) Defendant argues joinder of FirstBank (*i.e.*, the Lender) is necessary and would not unnecessarily complicate the case, prolong litigation, nor broaden the scope of

discovery, as the Court determined in its Order. (Doc. No. 58 at 4-7.) He further contends there are allegations common to Plaintiff and the Lender, and reiterates that the Lender and its employees acted in violation of various state and federal criminal laws. (*Id*. at 2-3.) Plaintiff has not filed a response to Defendant's Motion for Reconsideration.

Defendant has not demonstrated manifest error, and reconsideration is therefore not warranted under the circumstances. *Nat'l Bus. Brokers*, 115 F.Supp.2d at 1256. ("A motion to reconsider should be denied unless it clearly demonstrates manifest error of law or fact or presents newly discovered evidence."). In its May 20, 2024 Order, the Court concluded the Lender is not an indispensable party under Rule 19 because (1) the Lender is not necessary for the existing parties to obtain complete relief; (2) Defendant has not shown the Lender has an interest in the case that would be impaired; and (3) there is no substantial risk of multiple or inconsistent obligations. (Doc. No. 57 at 6-7.) The Court further concluded permissible joinder under Rule 20 is not warranted because there are insufficient allegations common to Plaintiff and the Lender. (*Id*. at 8.) Defendant does not identify any intervening change in the law, newly discovered evidence, or the need to correct clear error or manifest injustice. *Sanchez*, 2014 WL 4852251, at *2. And the Court does not see any on its own.

As noted above, it is undisputed that Defendant and the Lender never entered into a settlement agreement before selling the Debt to the SBA. (SSOF at 7 ¶ 35; *see also* Doc. No. 63 at 3 (Defendant says he "refused" the Lender's 2018 offer).) Thus, Defendant's obligations remained intact when the Debt was purchased by the SBA in 2019. Moreover, any references or allegations concerning the December 2023 settlement negotiations are immaterial. (*See supra* note 7.) Thus, the Court sees no basis to reverse course on the issue of joinder.

17

Perhaps Defendant has some separate claim to make against the Lender based on the Lender's conduct or approach to negotiations, but that does not disturb or otherwise impact Plaintiff's right to recover in this case.

## CONCLUSION

**WHEREFORE**, for the foregoing reasons, the Court **GRANTS** Plaintiff's Motion for Summary Judgment (Doc. No. 62) and **ORDERS** that the Clerk of Court enter judgment against Defendant in the amount as follows:

- The principal amount of $100,801.08;
- Prejudgment interest of $38,969.07, plus interest accruing as of July 17, 2024, at the applicable rate of 7.38% until the date of judgment;
- Treasury fees in the amount of $41,478.74;
- DOJ fees in the amount of $5,291.75;
- Post-judgment interest at the legal rate in effect on the date of entry of judgment, to be compounded annually pursuant to 28 U.S.C. § 1961(b).

The Court further **DENIES** Defendant's Motion for Reconsideration. (Doc. No. 58.) The Clerk of Court is directed to **close the case**.

Dated this 22nd day of November, 2024.

**BY THE COURT:**

_____
Maritza Dominguez Braswell
United States Magistrate Judge